## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

|  |  |
|---|---|
| (1)  LAWRENCE A. LOCKE, individually and on behalf of all others similarly situated, | ) ) ) |
|  | )  CIVIL NO:_____ |
| Plaintiffs, | ) |
| v. | ) ) |
| (1)  QUIBIDS, LLC, | ) |
|  | )  **JURY TRIAL DEMANDED** |
| Defendant. | ) ) ) ) |

## CLASS ACTION COMPLAINT

TO THE HONORABLE COURT:

Plaintiff Lawrence A. Locke, on behalf of himself and all other persons similarly situated, by the undersigned attorneys, alleges the following against Defendant QuiBids, LLC ("QuiBids"), based on his personal knowledge as to himself and his own acts and on information and belief as to all other matters.

## <u>NATURE OF ACTION</u>

1.      Plaintiff brings a class action arising from QuiBids' operation of QuiBids.com, an interactive website on which consumers are enticed to buy 'bids" for use in on-line auctions of consumer products with the promise of obtaining those consumer products at significant discounts from retail prices.   QuiBids.com offers consumers the chance to bid on a variety of consumer products, including high ticket items such as high-definition televisions, laptop computers, other electronic equipment, and even automobiles.   At any given time, QuiBids.com is conducting auctions of dozens of these high-ticket items.   Each QuiBids.com auction lasts many hours, and each item typically draws numerous bids, with high ticket items drawing hundreds or even thousands of bids.   Each bid purchased from QuiBids costs $0.60.   In each QuiBids.com auction, each $0.60 bid placed by a consumer raises the purchase price of the item by either $.01 or $.02, depending on the format of the auction.

2.      QuiBids promotes itself (on its website, through widespread internet advertising and emails) as providing an opportunity for consumers to win luxury items at

significant discounts compared to retail stores and E-Bay, and it claims that winning bidders on QuiBids.com typically save 80%-95% compared to retail prices.  In one e-mail promotion, QuiBids cites a customer winning a $20,000 Honda Civic automobile for $1,740.78 in a two-cent QuiBids auction.  That price means QuiBids sold 87,039 bids which were used in that auction.  At $0.60 per bid, QuiBids grossed $52,233.40 from the bids alone, an amount that dwarfs not only any savings realized by the winning bidder individually, but the retail cost of the car.  This illustrates the critical difference between QuiBids and E-Bay – losing bidders on E-Bay do not pay anything.

3.     Under the auction system set up by QuiBids, most consumers using the site will not win the majority of auctions for low ticket items on which they bid and will rarely, if ever, win auctions of high ticket items.  Given this, and given that each losing attempt to win an action costs the consumer money (because each bid costs $.60), QuiBids.com functionally constitutes something more like a gambling website than an auction website.  Consumers spend money to place bets in the hopes of winning a prize – a consumer product at a significant discount.  As is true with traditional gambling, the overwhelming majority of customers who use QuiBids.com will lose money doing so; that is, the total amount they spend between purchasing bids, paying for items in auctions they win and paying for any items they purchase using the "Buy It Now" feature (explained below) will exceed the retail value as stated on QuiBids.com of the items they receive, if any.

4.     Unlike a gambling website or a casino, however, QuiBids.com does not disclose its true nature.  It does not disclose the very low probability of a customer

receiving a financially positive outcome from using the website. In contrast, the odds of winning a lottery are calculable and publicized. Likewise, the payback percentages of various casino games are calculable and widely available. Indeed, slot machines are regulated as to the percentage of money put into them that they will pay back. Nowhere on QuiBids' site, however, does it provide information on what percentage of the money spent by its customers is returned to the customers as merchandise, nor does QuiBids provide any basis for calculating same.

5.     QuiBids' failure to disclose the fact that the overwhelming majority of customers will lose money by using the site and the percentage of money returned constitutes violations of the Oklahoma Consumer Protection Act and common law fraud by omission under Oklahoma law. Plaintiff seeks to represent a class of all persons who lost money using QuiBids.com; that is, a class of all customers for whom the total amount spent between purchasing bids, paying for any auction items won and paying for items purchased using the "Buy It Now" feature exceeded the retail values as stated on QuiBids.com of the items they received, if any.

6.     QuiBids additionally fails to disclose material facts about bidding on high ticket items (items with a retail value of $100 or more). In the bidding on any high ticket item, multiple bids will always be made during the last 20 seconds of the time originally set for bidding by QuiBids. This is true for two reasons: (1) because it is a wise bidding strategy adopted by many bidders, and (2) because QuiBids.com has a "Bid-O-Matic" feature whereby customers can have the site automatically bid for them on virtually all auctions of high ticket items, and the Bid-O-Matic feature only bids when there are 20

seconds or less left in the auction.  As a consequence, on a high ticket item, any bid placed before the last 20 seconds originally set for bidding by QuiBids will never succeed in winning the auction and is a complete and utter waste of money.  Notably, QuiBids.com does not disclose that any bid placed on a high ticket item prior to the last 20 seconds originally set for bidding by QuiBids is inevitably a waste of money.

7.      QuiBids' failure to disclose on the website that placing bids on high ticket items before the last 20 seconds it originally set for bidding is a complete waste of money is a violation of the Oklahoma Consumer Protection Act and constitutes common law fraud by omission under Oklahoma law.  On behalf of the proposed class, Plaintiff asserts this additional claim.

## JURISDICTION AND VENUE

8.      Pursuant to 28 U.S.C. § 1332(d)(2), this Court has jurisdiction over this action because it is filed as a class action, the amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and members of the class are citizens of states other than QuiBids' state of citizenship.

9.      QuiBids provides in the "Terms & Conditions" posted on QuiBids.com that any legal action or proceeding related to the QuiBids.com website shall be brought exclusively in a federal or state court sitting in Oklahoma and that a consumer's use of QuiBids.com shall be governed by the laws of the United States of America and the State of Oklahoma without regard to Oklahoma's conflicts of law principles.  Venue also lies in this District pursuant to 28 U.S.C. § 1391, because QuiBids resides in this Judicial

District and a substantial part of the events or omissions giving rise to the claim occurred in this Judicial District.

## PARTIES

10.     Plaintiff Lawrence A. Locke ("Locke" or "Plaintiff") is a resident of Tigard, Oregon.

11.     Defendant QuiBids, LLC ("QuiBids") is an Oklahoma limited liability company which has its principal place of business in Oklahoma City, Oklahoma. QuiBids may be served with process through its registered agent for service of process, Matt Beckham, at 1601 N.W. Expressway, Suite 1500, Oklahoma City, Oklahoma 73118 or at 2200 N. Classen, Apt. 2002, Oklahoma City, Oklahoma 73106.

## FACTUAL ALLEGATIONS.

12.     QuiBids purports to be an online auction company.  At QuiBids' website, QuiBids.com (the "Site"), QuiBids offers an interactive service through which customers purchase bids and attempt to win various consumer goods, including items such as iPods, Macbooks, PS3s, and other high-ticket items.  QuiBids has operated the Site since at least July 2009.

13.     Before a customer can place bids on the Site, he or she must first register an account on the Site.  Only one account per customer is permitted.  Upon information and belief, QuiBids keeps electronic records of all activity within each account, including all purchases of bids, all auctions in which bids were placed, all auction items won and purchased and all items purchased using the "Buy It Now" feature.  Once the account has been confirmed, the next step for the customer is to buy bids, which are sold in "packs"

of varying number.  There are five different sizes of bid packs to buy from QuiBids, and for all of them, the cost per bid is $.60.[1]  What the customer is purchasing is the right to place bids on particular auction items.  The purchase of bids is not a guarantee that the customer will win any auction.

14.     The Site's home page provides an "Ending Auctions" section that lists the auctions purportedly closest to ending.  Each of these auctions has a time, a price, a bidder name, a picture of the product, and a colored banner with a cent number displayed in the upper right corner.

15.     Whenever a customer bids during the last 20 seconds of an auction, additional time is added to the auction by QuiBids.  Initially, another 20 seconds is added.  At some point, QuiBids may decide to reduce the amount of time added by an additional bid to 15 seconds.  After that, QuiBids may decide to add only an additional 10 seconds for each additional bid.  Ten seconds will be added for every additional bid made until, finally, no more bids are made in the last 10 seconds.  The last bidder "wins" the auction and the right to purchase the item.

16.     Each auction has a specific amount by which the purchase price of the item increases when a bid is placed.  On a one-cent auction, the final sale price will increase by $0.01 each time a bid is placed.  On a two-cent auction, the final sale price will increase by $0.02 each time a bid is placed.  The price represents what the consumer who wins the auction will have to pay to obtain the product if the auction were to end at that

_____

[1] Customers may also obtain bids by participating in auctions of bid packs called "Vouchers" and the price per "Voucher" bid for customers winning such auctions may be less than $.60 per bid.

point.  An auction winner ends up paying the cost of all the bids he or she placed on the item, the purchase price of the item and shipping costs.

17.     For a losing bidder, QuiBids offers a "Buy It Now" feature pursuant to which the product can be purchased at the full retail price stated on the Site for up to two hours after the end of the auction.  The losing bidder gets a credit towards the purchase price for the cost of the losing bids he or she expended.[2]  The "Buy It Now" purchase price is typically higher than the best price for which the item could be purchased on the internet or in retail stores.

18.     Unlike traditional auctions, when a QuiBids consumer bids on an item, the consumer pays $0.60 for each bid, regardless of whether or not the consumer actually wins the item.  For example, in a traditional auction, a consumer who bids $1.00 on an item but loses the auction does not pay the $1.00 losing bid.  Under QuiBids' scheme, however, a consumer may bid multiple times on an item and ultimately lose the auction but will have lost the price of the losing bids.  For example, QuiBids may be in the process of conducting a one-cent auction for an item which stands at $10.00 with 60 seconds left on the timer.  If a customer A places one $0.60 bid on the item, the price will be raised to $10.01, and customer A will have paid $0.60.  A dozen subsequent bids could be made on the item by customers B-M, which will raise the price to $10.13 and eliminate customers A-L as high bidders, but customers A-L will each have paid the amount of their bids, and QuiBids will have collected an additional $7.80.

---

[2] Credit is not given for "Voucher" bids won in auctions.

19.     The most savvy QuiBids customers wait until the final 20 seconds originally set for bidding by QuiBids to bid on high ticket items (items with a retail value of $100 or more).  Auctions of high-ticket items open with many hours to bid, and many customers purchase and place bids in the hours before the final 20 seconds originally set for bidding by QuiBids, completely unaware that these bids have no chance of winning and that the money spent on those bids is an utter waste.  The Site offers consumers the option on virtually all high ticket items to have the Site bid automatically for them pursuant to pre-set parameters by using the Bid-O-Matic feature.  Recognizing that bids made in the final 20 seconds it originally set for bidding of an auction of a high ticket item are the only bids with any chance of winning, QuiBids has designed this feature so that it will only place bids within that time frame.  Thus, the Site itself, through the Bid-O-Matic feature, is designed so as to make bidding on high ticket items before the final 20 seconds originally set for bidding by QuiBids a complete waste of time and money.  Yet, this fact is nowhere disclosed on the Site.  The failure to disclose this fact is unfair, deceptive and fraudulent.

20.     Unfortunately, the unfairness, deception and fraudulent nature of the Site goes far beyond wasted bids placed on auctions of high ticket items before the last 20 seconds originally set for bidding by QuiBids.  The true nature of the Site is not disclosed, much to the detriment of the overwhelming majority of its users.  QuiBids offers nothing more to its customers than a very low probability of purchasing merchandise at a discount.  Those customers will not win the majority of the auctions in which they participate and will win very few, if any, auctions on high ticket items (items

with a retail value of $100 or greater).  Consequently, for the overwhelming majority of customers who play QuiBids' game, the money they will spend to purchase bids and pay for any items which they are lucky enough to win will greatly exceed the retail value of any items they win and purchase.

21.    The existence of the "Buy It Now" feature does not change this fact.  Even customers who regularly use the feature will end up paying more between the cost of the bids, the purchase prices and shipping costs of any items won in auctions and the purchase prices and shipping costs of any items purchased using the "Buy It Now" feature than the retail values as stated on QuiBids.com of the merchandise they receive. Crucially, unlike games of chance played in a casino, which may only be operated under specific statutory authority, QuiBids provides no information to its customer of his odds of winning or what percentage the "house" keeps.   In truth, QuiBids is offering something akin to a raffle or some other type of gambling, despite purporting to operate an "auction."   Nowhere on the Site does QuiBids disclose the very low probability of benefitting financially from using the Site.  Its failure to do so is unfair, deceptive and fraudulent.

## FACTS SPECIFIC TO NAMED PLAINTIFF

22.    Plaintiff is an Oregon resident who learned about QuiBids.com by reading publicly-available news and magazine features in early-to-mid 2010.   These sources emphasized that consumers could save an average of 80%, and up to 95%, on consumer products on QuiBids.com compared to the fair retail prices of those consumer products.

23.    Plaintiff first visited QuiBids.com on July 18, 2010.  What stood out to Plaintiff while on the Site was its statements emphasizing that all items would be sold at extremely low prices, with huge savings compared to retail prices.

24.    On the same day, Plaintiff purchased the "Beginner Bid Pack" for $45.00. In return, he received 75 bids.  Plaintiff also bid on three bid packs called "25-bid Vouchers."  Plaintiff won two of the three Vouchers he bid on, and he paid a total of $6.11 for them.  All told, Plaintiff spent $51.11 to purchase 125 bids or $.41 per bid.

25.    Plaintiff bid for several consumer products advertised on the Site on July 18, 2010, and July 19, 2010, but he won none of them despite using all his bids. Plaintiff's $51.11 was spent on nothing more than a chance to win—he received nothing of value in return.  That is more like gambling than a traditional auction in which the losing bidders pay nothing.

26.    More specifically, on July 18, 2010, Plaintiff placed losing bids for consumer products on the Site as follows:

9 bids on a Nikon camera (high ticket item), and

6 bids on an external hard drive.

27.    On July 19, 2010, Plaintiff placed losing bids for consumer products on the Site as follows:

1 bid on an HDMI cable;

10 bids on an HP Printer (high ticket item);

64 bids on an LG 55" HDTV (high ticket item); and

1 bid on a Nikon camera (high ticket item).

28.     Plaintiff made a number of bids on the high ticket items before the final 20 seconds originally set for bidding by QuiBids.

29.     In the one-cent LG 55" HDTV auction, the TV sold for $228.99, which means ultimately 22,859 bids were placed, 64 by Plaintiff personally.  For the winning bidder, this price likely represented a significant discount from the retail price, which was probably at least $1,500.00.  However, the amount paid to QuiBids for the bids placed on the Site is staggering in comparison -- 22,859 bids at $0.60 each amounts to $13,715.40. If QuiBids in fact paid the retail cost to acquire the television, QuiBids grossed over $12,000.00 on that one auction.  Even so, since one consumer purchased the television at $228.59, QuiBids brags that the consumer saved 85% compared to the retail price, never mentioning that the rest of its customers spent as much as $14,000 on that auction and received nothing in return.

## CLASS ACTION ALLEGATIONS

30.     Plaintiff seeks to represent the following class:

> All persons in the United States (the 50 states, Washington, D.C., Guam, the U.S. Virgin Islands and Puerto Rico) who spent more money on QuiBids.com than the value of the goods they received, if any – persons for whom the total amount spent on purchasing bids, on paying for any auction items they won (including shipping costs) and paying for items using the "Buy It Now" feature (including shipping costs) exceeded the retail values as listed on QuiBids.com of the goods they received (the "Class").

31.     This action has been brought and may properly be maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3).

32.     The members of the Class are so numerous that joinder of all members is impracticable.  The exact number of members in the Class is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery.  However, QuiBids claims on the Site that it has in excess of 1,600,000 "registered users."  Because customers of the Site have to provide email addresses in order to register and have to provide mailing addresses in order to purchase bids and merchandise using credit cards, Plaintiff believes that QuiBids has the information necessary to allow notice to be sent individually to each member of the Class.

33.     Common questions of law and fact exist as to all members of the Class. Among others, these common questions include, but are not limited to:

a.      whether QuiBids' conduct constituted violations of the Oklahoma Consumer Protection Act;

b.      whether QuiBids' conduct constituted common law fraud by omission under Oklahoma law;

c.      whether QuiBids should, in equity and good conscience, refund to the members of the Class their losses pursuant to Oklahoma's cause of action for money had and received;

d.      whether QuiBids should refund the losses of the members of the Class pursuant to the Oklahoma cause of action for unjust enrichment; and

e.      whether, as a result of violations of the Oklahoma Consumer Protection Act herein, Plaintiff and the members of the Class are

entitled to injunctive relief or other remedies, in addition to damages, and, if so, the nature of such relief.

34. These common questions predominate over any questions affecting only individual members of the Class.

35. Plaintiff's claims are typical of the claims of the members of the Class, as he and all the members of the Class were similarly affected by QuiBids' wrongful uniform conduct and assert the same legal theories. Plaintiff has no interests antagonistic to the interests of the other members of the Class. Plaintiff and all members of the Class have sustained similar economic injuries arising out of QuiBids' violations of common and statutory law as alleged herein.

36. Plaintiff is an adequate representative of the Class because his interests and those of his counsel do not conflict with the interests of the members of the Class he seeks to represent; he has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously. Plaintiff and his counsel will fairly and adequately protect the interests of all of the members of the Class.

37. A class action is superior to all other available methods for the fair and efficient adjudication of these controversies since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members will be relatively small, the expense and burden of individual litigation make it impossible for Class members to individually redress the wrongs done to them. There will be no difficulty in the management of this class action, whereas individualized litigation presents the

potential for inconsistent or contradictory judgments.  A class action presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, comprehensive supervision by a single court and the conservation of scarce judicial resources.

<u>COUNT I</u>

<u>VIOLATION OF OKLAHOMA CONSUMER PROTECTION
ACT BY DECEPTIVE TRADE PRACTICES</u>

38.     Plaintiff incorporates all of the allegations of Paragraphs 1 through 37 into Count I as if they were fully set forth here verbatim.

39.     QuiBids is a "person" within the meaning of the Oklahoma Consumer Protection Act.  15 O.S. ANN. § 752(1).  Plaintiff and all the members of the Class are "consumers" as that term is used in 15 O.S. ANN. § 761.1(A).  Plaintiff and the other members of the Class and QuiBids were engaged in "consumer transactions" within the meaning of the Act.  *Id.* at § 752(2).

40.     QuiBids failed to inform its customers:  (a) that the overwhelming majority of customers using the Site would lose money by doing so, (b) of the percentage of the money spent by customers on the Site that is returned to customers in the form of merchandise; and (c) that with respect to auctions of high-ticket items (items with a retail value of $100 or more), bids placed on QuiBids.com for those items before the last 20 seconds originally set for bidding by QuiBids will inevitably be unsuccessful and, thus, a waste of money.  These failures to disclose constituted the commission of an act or practice declared to be a violation of the Act pursuant to Section 753(20), in that they

constituted deceptive trade practices as defined in Section 752 of the Act. *Id.* at §§ 753(20) & 752(13). Specifically, QuiBids' omissions constituted omissions that deceived Plaintiff and the members of the Class or that could reasonably be expected to deceive or mislead a person to the detriment of that person.

41.     As a result of QuiBids' violations, Plaintiff and the other members of the Class have sustained actual damages equal to the amounts they have lost using QuiBids.com – the amount by which the total dollars they paid for bids, plus the total dollars they paid to purchase items won during auctions (including shipping costs), plus the total dollars they paid to purchase items using the "Buy It Now" feature (including shipping costs) exceeded the total retail values as stated on QuiBids.com of the merchandise they received. Alternatively, as a result of QuiBids' violations, Plaintiff and the other members of the Class have sustained actual damages equal to the amounts they paid for the losing bids they made on high-ticket items on QuiBids.com before the last 20 seconds originally set for bidding by QuiBids.

42.     QuiBids is liable to Plaintiff and the other members of the Class for those actual damages caused by QuiBids' violation of Act and for their reasonable costs and attorneys' fees. *Id.* at § 761.1(A). In addition, pursuant to Section 761.1(C) of the Act, Plaintiff seeks an injunction requiring QuiBids to disclose the omitted information on the Site.

## COUNT II

## VIOLATION OF OKLAHOMA CONSUMER PROTECTION ACT BY UNFAIR TRADE PRACTICES

43.     Plaintiff incorporates all of the allegations of Paragraphs 1 through 42 into Count II as if they were fully set forth here verbatim.

44.     QuiBids is a "person" within the meaning of the Oklahoma Consumer Protection Act.  15 O.S. ANN. § 752(1).  Plaintiff and all the members of the Class are "consumers" as that term is used in 15 O.S. ANN. § 761.1(A).  Plaintiff and the other members of the Class and QuiBids were engaged in "consumer transactions" within the meaning of the Act.  *Id.* at § 752(2).

45.     QuiBids failed to inform its customers:  (a) that the overwhelming majority of customers using the Site would lose money by doing so, (b) of the percentage of the money spent by customers on the Site that is returned to customers in the form of merchandise; and (c) that with respect to auctions of high-ticket items (items with a retail value of $100 or more), bids placed on QuiBids.com for those items before the last 20 seconds originally set for bidding by QuiBids will inevitably be unsuccessful and, thus, a waste of money.  These failures to disclose constituted the commission of an act or practice declared to be a violation of the Act pursuant to Section 753(20), in that they constituted unfair trade practices as defined in Section 752 of the Act.  *Id.* at §§ 753(20) & 752(4).  Specifically, QuiBids' omissions constituted practices which offend public policy and are immoral, unethical, oppressive, unscrupulous and substantially injurious to

consumers, because they caused Plaintiff and the members of the Class to waste their money.

46.     As a result of QuiBids' violations, Plaintiff and the other members of the Class have sustained actual damages equal to the amounts they have lost using QuiBids.com – the amount by which the total dollars they paid for bids, plus the total dollars they paid to purchase items won during auctions (including shipping costs), plus the total dollars they paid to purchase items using the "Buy It Now" feature (including shipping costs) exceeded the total retail values as stated on QuiBids.com of the merchandise they received.  Alternatively, as a result of QuiBids' violations, Plaintiff and the other members of the Class have sustained actual damages equal to the amounts they paid for the losing bids they made on high-ticket items on QuiBids.com before the last 20 seconds originally set for bidding by QuiBids.

47.     QuiBids is liable to Plaintiff and the other members of the Class for those actual damages caused by QuiBids' violation of Act and for their reasonable costs and attorneys' fees.  *Id.* at § 761.1(A).  In addition, pursuant to Section 761.1(C) of the Act, Plaintiff seeks an injunction requiring QuiBids to disclose the omitted information on the Site.

## COUNT III

## COMMON LAW FRAUD BY OMISSION

48.     Plaintiff incorporates all of the allegations of Paragraphs 1 through 47 into Count III as if they were fully set forth here verbatim.

49.     QuiBids omitted to disclose material facts to its customers:  (1) that the overwhelming majority of customers using the Site would lose money doing so, (2) the percentage of the money spent by customers that is returned to customers in the form of merchandise, and (3) that with respect to auctions of high-ticket items (items with a retail value of $100 or more), bids placed on QuiBids.com for those items before the last 20 seconds originally set for bidding by QuiBids will inevitably be unsuccessful and, thus, a waste of money.   Such facts are material in that a reasonable consumer would have considered them important in deciding whether and when to spend the money to use the QuiBids website.   QuiBids omitted to disclose these facts with the intent that its customers would use the website.  Because QuiBids' omissions to disclose are material, it is presumed that Plaintiff and all the other members of the Class reasonably relied upon the omissions.

50.     QuiBids' omissions proximately caused actual damages to Plaintiff and the other members of the Class in the amount they lost using the Site – the amount by which the money they paid for the bids, plus the money they paid to purchase the items won in auctions (including shipping costs), plus the money they paid to purchase items using the "Buy It Now" feature (including shipping costs) exceeded the total retail values as stated on QuiBids.com of the merchandise received.   Alternatively, QuiBids' omissions proximately caused actual damages to Plaintiff and the other members of the Class in the amount they paid for the losing bids they made on high-ticket items on QuiBids.com before the last 20 seconds originally set for bidding by QuiBids.

## COUNT IV

## MONEY HAD AND RECEIVED

51.     Plaintiff incorporates all of the allegations of Paragraphs 1 through 50 into Count IV as if they were fully set forth here verbatim.

52.     The money lost by Plaintiff and the members of the Class using the Site – the amount by which the money they paid for the bids, plus the money they paid to purchase the items won in auctions (including shipping), plus the money they paid to purchase items using the "Buy-It-Now" feature (including shipping costs) exceeded the total retail values as stated on QuiBids.com of the merchandise they received – constitutes money which, in equity and good conscience, should be returned by QuiBids to Plaintiff and the members of the Class.

53.     Alternatively, the money spent by Plaintiff and the members of the Class on losing bids placed before the last 20 seconds originally set for bidding by QuiBids in auctions of high-ticket items (items with a retail value of $100 or more) constitutes money in QuiBids' possession which, in equity and good conscience, should be returned to Plaintiff and the members of the Class.

## COUNT V

## UNJUST ENRICHMENT

54.     Plaintiff incorporates all of the allegations of Paragraphs 1 through 53 into Count V as if they were fully set forth here verbatim.

55.     The money lost by the Plaintiff and members of the Class using the Site – the amount by which the money they paid for the bids, plus the money they paid to

purchase the items won in auctions (including shipping costs), plus the money they paid to purchase items using the "Buy-It-Now" feature (including shipping costs) exceeded the total retail values as stated on QuiBids.com of the merchandise received – constitutes a benefit conferred upon QuiBids by Plaintiff and the Class.  Under the circumstances, and as a matter of equity, QuiBids was unjustly enriched by its receipt of that money and it should return that money to Plaintiff and the members of the Class.

56.    Alternatively, the money spent by Plaintiff and the members of the Class on losing bids placed before the last 20 seconds originally set for bidding by QuiBids in auctions of high-ticket items (items with a retail value of $100 or more) constitutes a benefit conferred by members of the Class on QuiBids.  Under the circumstances, and as a matter of equity, QuiBids was unjustly enriched by its receipt of that money, and it should return that money to Plaintiff and the members of the Class.

## REQUEST FOR RELIEF

Individually, and on behalf of the Class, Plaintiff respectfully requests the Court to award the following relief:

a.    An order certifying the proposed Class under FED. R. CIV. P. 23(b)(3) and appointing Plaintiff and Plaintiff's counsel to represent the Class;

b.    A judgment finding that QuiBids is liable under all legal claims asserted herein;

c.    A judgment awarding actual damages to Class members as set forth above;

d.    A judgment awarding a permanent injunction as set forth above;

e.    A judgment awarding attorneys' fees and litigation costs;

f.      A judgment awarding pre-judgment and post-judgment interest at the maximum rates allowable at law or in equity; and

g.      A judgment awarding all such other legal or equitable relief as justice requires.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

DATED: November 30, 2010

/s/ Edward L. White
Edward L. White, OBA #16549
**EDWARD L. WHITE, P.C.**
9301 Cedar Lake Ave., Suite 200
Oklahoma City, Oklahoma 73114
Telephone:  (405) 810-8188
Facsimile:   (405) 608-0971
Email:  ed@edwhitelaw.com

-and-

Roger L. Mandel
rmandel@beckham-mandel.com
Blake L. Beckham
bbeckham@beckham-mandel.com
Jose M. Portela
c2coast@aol.com
Sarita A. Smithee
ssmithee@beckham-mandel.com
**BECKHAM & MANDEL**
3400 Carlisle Street, Suite 550
Dallas, Texas 75204
Telephone:  (214) 965-9300
Facsimile:   (214) 965-9301

Andrew Kierstead
kiersteadlaw@aol.com
**LAW OFFICE OF ANDREW S. KIERSTEAD**
1001 SW Fifth Ave., Suite 1100
Portland, OR 97204
Telephone:  (508) 224-6246
Facsimile:   (508) 224-4356

Attorneys for Plaintiff and the Class