# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

LAWRENCE A. LOCKE, individually and )
on behalf of all others similarly situated, )
                                 )
           Plaintiff, )
                                 )
v. )    Case No. 5:10-cv-01277-F
                                 )
QUIBIDS, LLC, )
                                 )
           Defendant. )

---

## PLAINTIFF'S RESPONSE, AND BRIEF IN SUPPORT,
## TO MOTION TO DISMISS WITH BRIEF IN SUPPORT

---

DATED: March 25, 2011

Edward L. White
**EDWARD L. WHITE, P.C.**
13924 Quail Pointe Drive,
Suite B
Oklahoma City, OK 75134
Telephone: (405) 810-8188
Facsimile: (405) 608-0971

Andrew Kierstead
**LAW OFFICE OF ANDREW S. KIERSTEAD**
1001 SW Fifth Ave., Ste. 1100
Portland, OR 97204
Telephone: (508) 224-6246
Facsimile: (508) 224-4356

Roger L. Mandel
Blake L. Beckham
Jose M. Portela
Sarita A. Smithee
**BECKHAM & MANDEL**
3400 Carlisle Street, Suite 550
Dallas, Texas 75204
Telephone: (214) 965-9300
Facsimile: (214) 965-9301

Attorneys for Plaintiff and the Class

# TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS ................................................................................................ ii

INDEX OF AUTHORITIES ........................................................................................ iv

I.    INTRODUCTION ............................................................................................ 1

II.   RELEVANT FACTUAL ALLEGATIONS ..................................................... 3

III.  QUIBIDS HAS NOT DISCLOSED THE OMITTED MATERIAL FACTS ABOUT
      THE SITE SUFFICIENTLY TO AVOID LIABILITY UNDER THE OCPA AND
      COMMON LAW FRAUD ................................................................................ 4

      A.    *THE OCPA* ......................................................................................... 4

            1.    Even if the Supposed Disclosures Actually Conveyed the Omitted
                  Material Facts, They Would Not Avoid Liability for QuiBids Because
                  the Net Impression Conveyed by the Site Is False ....................... 5

            2.    The Site Does Not Adequately Disclose that the Overwhelming
                  Majority of Customers Using the Site Will Lose Money by Doing So ..... 10

            3.    The Site Does Not Adequately Disclose the Percentage of Money
                  Spent by Customers on the Site that Is Returned to the Customers
                  in the Form of Merchandise ........................................................ 11

            4.    The Site Does Not Adequately Disclose that Bidding on High-Ticket
                  Items Before the Last 20 Seconds Originally Set for Bidding by QuiBids
                  Will Inevitably Be Unsuccessful and, Thus, a Waste of Money .............. 12

            5.    The Site Does Not Adequately Disclose that Registered Users of the
                  Site Will Be Directed to a Part of the Site that Offers Less Auction
                  Items to Bid Upon than the Portion of the Site Accessed by
                  Unregistered Potential Customers ............................................... 13

      B.    *COMMON LAW FRAUD.* ............................................................... 13

IV.   PLAINTIFF HAS SUFFICIENTLY PLED CLAIMS UNDER THE OCPA BASED
      ON QUIBIDS' OMISSIONS ........................................................................ 16

      A.    *THE OCPA MAKES QUIBIDS' OMISSIONS ACTIONABLE WITHOUT ANY
            COMMON LAW DUTY TO DISCLOSE ON THE PART OF QUIBIDS.* ............. 16

      B.    *IF NECESSARY, PLAINTIFF HAS ALLEGED A COMMON LAW DUTY TO
            DISCLOSE.* ...................................................................................... 19

V.      PLAINTIFF SUFFICIENTLY ALLEGES A DUTY TO DISCLOSE FOR
        PURPOSES OF COMMON LAW FRAUD ...................................................................20

VI.     THE UNJUST ENRICHMENT AND MONEY HAD AND RECEIVED CAUSES
        OF ACTION ARE NOT PURELY DERIVATIVE OF THE THE OTHER CAUSES
        OF ACTION AND SHOULD NOT BE DISMISSED.....................................................23

VII.    REQUEST FOR RELIEF ...............................................................................................24

## INDEX OF AUTHORITIES

### CASES

*Blanchette v. Providence & Worcester Co.*, 428 F. Supp. 347 (D. Del. 1977) .............................14

*Cone v. American Metal Climax, Inc.*, 322 F. Supp. 1331 (E.D. Pa. 1971) .................................15

*Connick v. Suzuki Motor Co., Ltd.*, 675 N.E. 2d 584 (Ill. 1996) ..................................................19

*Deardorf v. Rosenbusch,* 206 P.2d 996 (Okla. 1949).....................................................................20

*Donaldson v. Reed Magazine, Inc.*, 333 U.S. 178 (1948) .................................................................6

*FTC v. Cyberspace.com, LLC,* 453 F.3d 1196 (9th Cir. 2006) .........................................................8

*FTC v. Stefanchik*, 559 F.3d 924 (9th Cir. 2009) .............................................................................7

*In Re Saturn L-Series Timing Chain Products Liab. Lit.*, MDL No. 1920, 2008 WL 4866604,
    at *22 (D. Neb. Nov. 7, 2008) ....................................................................................................19

*Kalwajtys v. FTC*, 237 F.2d 654 (7th Cir. 1956) ..............................................................................7

*Keithly v. Intellius Inc.*, No. C09-1485-RSL, 2011 WL 538480, at *6
    (W.D. Wash. Feb. 8, 2011)...........................................................................................................9

*Kennedy v. Tallant*, 710 F.2d 711 (11th Cir. 1983) ........................................................................14

*Miller v. American Family Publishers,* 663 A.2d 643 (N.J. Supr. 1995) ........................................8

*Morris v. ADT Security Services*, 580 F. Supp. 2d 1305 (S.D. Fla. 2008) ....................................19

*Nat'l Home Products, Inc. v. Gray*, 416 F. Supp. 1293 (D. Del. 1976) .........................................14

*Oklahoma Dept. of Securities v. Blair,* 231 P.3d 645 (Okla. 2010) ..............................................23

*P&E Finance Co. v. Globe & Republic Ins. Co. of America*, 239 P.2d 1009 (Okla. 1952)..........24

*Panag v. Farmers Inc. Co. of Wash.*, 204 P.3d 885 (Wash. 2009) (en banc)..................................9

*Parks v. AT&T Mobility, LLC*, No. CIV-09-212, 2010 WL 830000
    (W.D. Okla. Mar. 4, 2010)..........................................................................................5, 14, 16, 17

*Parks v. AT&T Mobility, LLC*, No. CIV-09-212-D, 2011 WL 102543
    (W.D. Okla. Jan. 12, 2011).....................................................................................................18, 22

*Patterson v. Beall,* 19 P.3d 839 (Okla. 2000)............................................................................8, 17

*Silk v. Phillips Petroleum Co.,* 760 P.2d 174 (Okla. 1988) ...........................................................20

*V.S.H. Realty, Inc. v. Texaco, Inc.*, 575 F.2d 411 (1st Cir. 1985)................................................19

*Varn v. Maloney*, 516 P.2d 1328 (Okla. 1973)..........................................................................20

## STATUTES

15 U.S.C. § 45(a)(1) ....................................................................................................................7

15 Okla. Stat. § 751 (et seq.) .......................................................................................................1

15 Okla. Stat. § 752(13)........................................................................................................8, 16

15 Okla. Stat. § 752(14)............................................................................................................17

15 Okla. Stat. § 753(20)............................................................................................................16

# I.

## __INTRODUCTION__

Simultaneously with the filing of this Response, Plaintiff is filing a motion for leave to file his Second Amended Class Action Complaint ("SAC"). The SAC seeks to assert a new claim: that QuiBids is engaged in commercial gambling in violation of Oklahoma law, which is actionable under the Oklahoma Consumer Protection Act ("OCPA"), 15 OKLA. STAT. § 751 (et seq.). In addition, in response to QuiBids' Motion to Dismiss with Brief in Support ("Motion") [Doc. 20], which argues that the FAC fails to plead a basis for a duty on the part of QuiBids to disclose certain omitted material facts, Plaintiff seeks with the SAC to expressly plead affirmative representations on the Home Page and Registration Pages of QuiBids.com ("the Site") which create a false impression and peculiar circumstances that impose a duty of disclosure upon QuiBids.

Plaintiff does not believe that amendment of the First Amended Class Action Complaint ("FAC") [Doc. 13] to plead the facts underlying QuiBids' duty of disclosure is strictly necessary, because the Site (including the Home Page and Registration Pages) are incorporated into the FAC as a matter of law (as correctly argued by QuiBids in the Motion at 5-7), allowing Plaintiff to respond based upon their contents without having expressly pled those contents in the FAC.[1] However, since Plaintiff seeks to add a new claim in the SAC, he has expressly included those allegations in the SAC.

In light of the SAC, Plaintiff's counsel suggested to QuiBids' counsel that the parties submit an agreed order pursuant to which the motion is withdrawn, Plaintiff is granted leave to

---

[1] Screen shots of the Home Page and Registration Pages are attached as Exhibits 1-7 both to the SAC, which is Exhibit 1 to Plaintiff's Motion for Leave to File Second Amended Class Action Complaint, filed contemporaneously herewith, and to the Declaration of Jose Vasquez, also filed contemporaneously herewith.

file the SAC, QuiBids is allowed to file a new motion to dismiss directly addressing the SAC, and Plaintiff is allowed to respond thereto. QuiBids declined to enter into such an agreement, and it opposes the Court granting Plaintiff leave to file the SAC. This leaves Plaintiff in the awkward position of responding to the Motion based upon the SAC when the Motion is addressed to the FAC.

Assuming the Court grants Plaintiff leave to file the SAC, as FED. R. CIV. P. 15 strongly counsels the Court should do, the Court will have two choices. First, it can simply deny the Motion as moot and allow QuiBids to file a new motion to dismiss directly addressing the SAC, as Plaintiff suggested to QuiBids. Alternatively, because the new allegations in the SAC relevant to the arguments made by QuiBids in the Motion are overwhelmingly based upon the contents of the Home Page and Registration Pages of the Site, which are deemed incorporated into the FAC as a matter of law, the Court can simply treat the Motion as applicable to the omission claims in the SAC that were also contained in the FAC and rule upon them based upon the Motion and this Response. If the Court does so, it should conclude that the Motion should be denied.

Initially, QuiBids' argument that all of Plaintiff's causes of action based on omissions should be dismissed because the Site allegedly discloses all of the material facts which Plaintiff alleges are not disclosed is without merit for two reasons. First, even if QuiBids had actually disclosed those facts as it contends it did – in fragments spread across an incredibly voluminous website which QuiBids calculatedly tried to avoid being read by its customers – it would not have sufficiently disclosed those facts to avoid liability pursuant to the "net impression" and "buried fact" doctrines. Second, the supposed disclosures do not, in fact, actually disclose the material facts which Plaintiff alleges should have been disclosed.

Next, QuiBids' argument that it had no duty to disclose the omitted material facts is without merit for two reasons.  First, no common law duty of disclosure must exist in order for QuiBids to be liable under the OCPA for omissions.  Second, as to common law fraud (and the OCPA, if necessary), QuiBids bears a common law duty to disclose because the Home Page and the Registration Pages of the Site, as incorporated by law into the FAC and as expressly pled in the SAC, create a false impression and because "peculiar circumstances" exist between QuiBids and its customers.

Finally, Plaintiff's causes of action for money had and received and unjust enrichment are not purely derivative of his OCPA and fraud claims, such that the Court should not automatically dismiss them in the unlikely event it were to dismiss the OCPA and fraud causes of action.

## II.

## RELEVANT ACTUAL ALLEGATIONS

QuiBids.com ("the Site") is huge, with dozens of links on the Home Page alone, and thousands of links from there.  SAC ¶ 13.  Printed on paper, the total contents of the Site would certainly amount to thousands of pages.  SAC ¶¶ 13.  The Home Page and Registration Pages contain a variety of statements and other materials which are designed to and do create the false impression that, and collectively represent that, users of the Site will routinely win the right to purchase valuable merchandise at significant discounts, such that the overwhelming majority of users will benefit financially from using the Site.  SAC ¶¶ 13-23, 56, 63 & 69 & Exhibits 1-7 thereto.  The Home Page and Registration Pages are also designed to encourage consumers to begin bidding under this false impression without ever visiting the other portions of the Site which might allow a consumer willing to spend a significant amount of time to read a voluminous amount of material to reach the conclusion that the impression created by the Home Page and Registration Pages is not entirely accurate.  SAC ¶¶ 13, 15, 16, 19, 21 & 23 & Exhibits

1-7 thereto.  However, even a consumer reading every word of the Site would not discover the true facts regarding QuiBids which Plaintiff alleges were omitted and which would cause the overwhelming majority of consumers to avoid the Site like the plague.  SAC ¶¶ 4-7, 13, 31-34, 58, 65 & 71.  In short, the Site is carefully designed to create for the typical consumer the false impression that users of the Site will routinely win the right to buy valuable merchandise at very significant discounts and, thus, that the overwhelming majority of users will financially benefit from using the Site while at the same time providing widely-fragmented disclosures which it can attempt to use to defend lawsuits such as this one.  SAC ¶ 13.

## III.

### QUIBIDS HAS NOT DISCLOSED THE OMITTED MATERIAL FACTS ABOUT THE SITE SUFFICIENTLY TO AVOID LIABILITY UNDER THE OCPA AND COMMON LAW FRAUD

*A.    THE OCPA*

QuiBids claims that as to each of the four omissions alleged as actionable by Plaintiff in the FAC (and repeated in the SAC along with one additional omission), a user could have navigated to three to six different spots within the incredibly voluminous QuiBids 101, Frequently Asked Questions ("FAQ") and Terms & Conditions and, from the combination of those statements, have understood the material facts which Plaintiff claims were not disclosed. Motion at 9-21.  Even if that were true (it is not), QuiBids' tactic of parceling out nuggets of information in widely spread-out locations on its voluminous website which theoretically could have been tracked down by a dogged user and read together with enough sophistication to allegedly have understood the omitted material facts simply does not prevent its failure to plainly, directly and simply disclose those materials facts from constituting deceptive and unfair trade practices under the OCPA.  Further, even if they had all been read by a dogged and sophisticated user, the supposed disclosures do not actually disclose the necessary material facts.

1.   Even if the Supposed Disclosures Actually Conveyed the Omitted Material Facts, They Would Not Avoid Liability for QuiBids Because the Net Impression Conveyed by the Site Is False.

The Home Page and Registration Pages of the Site, in colorful graphics and exciting verbiage, create the overwhelming and false impression that a typical user will routinely win the right to buy valuable merchandise at significant discounts and, thus, that the overwhelming majority of users of the Site will benefit financially from doing so. SAC ¶¶ 13-23, 56, 63 & 69 & Exhibits 1-7 thereto. A very small link to QuiBids 101 in white letters on a gray background is found at the top of the Home Page, while the "FAQ & Help" link and the "Terms & Conditions" links can only be found at the bottom in small white letters on a black background after extensively scrolling down on the Home Page. SAC ¶ 19 & Exhibits 1-5 thereto. The Terms & Conditions are also referenced on the First Registration Page, where a user has to click on a box agreeing to them and a link to them is provided, but there is no requirement that the user actually click on the link and go to the Terms & Conditions in order to register. SAC ¶ 21 & Exhibit 6 thereto. The Home Page and Registration Pages do not ever suggest that a user read QuiBids 101 or the FAQ before registering or beginning to bid. SAC ¶¶ 19-23 & Exhibits 1-7 thereto.

QuiBids 101 contains no less than 40 topics, each of which would require a separate click to access on the Site, and which when printed out covers 176 pages. Declaration of Jeff Guerts ("Guerts Decl.") [Doc. 20-1], Exhibit B thereto [Docs. 20-3 to 20-6]. The FAQ contains 9 major topics and well in excess of 45 subtopics, each of which would required a separate click on the Site to access. Guerts Decl., Exhibit C [Doc. 20-6]. Since QuiBids only attached the Table of Contents page of the FAQ to the Guerts Decl. accompanying its Motion, the total number of pages the FAQ would take when printed out is not known, but it is safe to say it would be in the

tens, if not hundreds, of pages. *Id.* The Terms & Conditions, when printed out, compose six pages of single spaced text. Guerts Decl., Exhibit A [Doc. 20-2].

As a consequence, the supposed disclosures could only be found by someone who did extensive clicking and scrolling through the website. *See* the Declaration of Jose Vasquez ("Vasquez Decl."), filed contemporaneously herewith, and Exhibit 8 thereto, which numbers the supposed disclosures, and Exhibit 9 thereto, which shows the separate and extensive clicking and scrolling that would be required to find each of these supposed disclosures. Of course, the Site is designed to channel customers from the Home Page through registration and into bidding without them ever reviewing QuiBids 101, FAQ or the Terms & Conditions, much less them engaging in the extensive searching that would be required to find all five of these statements. SAC ¶¶ 15, 16, 19, 21 & 23 & Exhibits 1-7 thereto.

Given that the entire Home Page and Registration Pages are designed to lead to the impression that any user is highly likely to win the right to purchase valuable merchandise at huge discounts, the net impression falsely created is that the overwhelming majority of customers who use the Site will financially benefit from doing so even to a user who miraculously had read all of the statements pointed to by QuiBids. And, this would be true regardless of the contents of the supposed disclosures.

Under these circumstances, even if QuiBids actually had buried the omitted material facts amongst these portions of the Site, it could still not avoid liability under the OCPA as a matter of law. The seminal opinion in this area is *Donaldson v. Read Magazine, Inc.*, 333 U.S. 178 (1948), in which the United State Supreme Court upheld the Postmaster General's finding that an advertisement constituted mail fraud by representing that prizes could be won by payment of only $3 and solving puzzles when this was not true. *Id.* at 188. There were sentences in the

advertisements and communications which, standing alone, would have conveyed to a careful reader information as to the actual $9.00 fee and the letter essay feature of the contest. *Id.* at 185. The district court had held that there could be no mail fraud because many people were intellectually capable of discovering the cost and nature of the contest by "intensive and concentrated reading" and by close analysis of the advertisements. *Id.* at 188. The United States Supreme Court disagreed and held that:

> Advertisements as a whole may be completely misleading although every sentence separately considered is literally true. This may be because things are omitted that should be said, or because advertisements are composed or purposely printed in such a way as to mislead. [Citations omitted]. That exceptionally acute and sophisticated readers might have been able by penetrating analysis to decipher the true nature of the contest or its terms is not sufficient to bar findings of fraud by a fact-finding tribunal. Questions of fraud may be determined in light of the effect advertisements would most probably produce on ordinary minds. [Citations omitted].

*Id.* at 188-189.

Subsequent to *Donaldson*, Congress passed Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1), which defines an act or practice as deceptive if "first, there is a representation, omission or practice that, second, is likely to mislead consumers acting reasonably under the circumstances, and, third, the representation, omission or practice is material." In interpreting and implementing this statute, the courts have held that a statement may be deceptive even if the constituent words may be literally or technically construed so as not to constitute a misrepresentation. *Kalwajtys v. FTC*, 237 F.2d 654, 656 (7th Cir. 1956). Thus, in considering whether a representation is likely to mislead consumers acting reasonably, the net impression created is considered. *FTC v. Stefanchik*, 559 F.3d 924, 928 (9th Cir. 2009). Crucially, a solicitation may be likely to mislead by virtue of the net impression it creates even

though the solicitation also contains truthful disclosures.  *FTC v. Cyberspace.com, LLC,* 453 F.3d 1196, 1200 (9th Cir. 2006).

Significantly, the OCPA was enacted to supplement the FTC Act, was derived from uniform laws promulgated by the FTC, and is to be liberally construed to effectuate its underlying purpose because it is remedial in nature. *Patterson v. Beall,* 19 P.3d 839, 846 (Okla. 2000).  And, similar to the FTC Act which makes an omission deceptive if it is "likely to mislead consumers," OCPA § 752(13) defines as a "deceptive trade practice" an omission "that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person." 15 OKLA. STAT. § 752(13).  Given the relationship between the OCPA and the FTC Act and the similar language used by them in defining deceptive acts, this Court should hold that Oklahoma would look to the net impression left on an ordinary person by the Site in deciding whether it is deceptive or unfair and hold that there is a question for the jury as to whether the widely dispersed combinations of sentences pointed to by QuiBids would prevent a false impression from being created by the Site even if they actually disclosed the omitted material facts.

Significantly, courts in other states have similarly interpreted their consumer protection statutes as providing that a decision as to whether an advertisement or website is deceptive should be based on its net impression upon an ordinary person and not upon whether a sophisticated consumer could have figured out the truth from statements deliberately buried by a defendant in a voluminous document.  For example, in *Miller v. American Family Publishers,* solicitations to enter into a publisher's sweepstakes and to buy magazines were held deceptive under New Jersey's Consumer Fraud Act because the net impression created was that immediately purchasing magazine subscriptions would enhance a consumer's chance of winning

the sweepstakes when, in fact, it had no effect on the odds of winning the sweepstakes at all.  663 A.2d 643, 651-654 (N.J. Supr. 1995).  The defendant argued "that a careful, literal reading of the quoted language reveals that the words do not actually say what plaintiffs claim they are intended to convey:  that the language refers only to magazine subscriptions and not to winning defendant's sweepstakes."  *Id.* at 649.  The court said in response that:

> There is no reason to believe that the rule in this state is or should be any different from that set out by the United States Supreme Court in *Donaldson*, and adopted by virtually every court that has considered the matter:  a claim of literal truth will not constitute a defense to a charge if the overall impression created by an advertisement is misleading and deceptive to an ordinary reader.

*Id.* at 654.

Similarly, two courts have held that the net impression standard applies under Washington's Consumer Protection Act.  *Keithly v. Intellius Inc.*, No. C09-1485-RSL, 2011 WL 538480, at *6 (W.D. Wash. Feb. 8, 2011); *Panag v. Farmers Inc. Co. of Wash.*, 204 P.3d 885, 895 (Wash. 2009) (en banc) (holding deceptive a collection notice which appeared to be for a liquidated past due amount but was actually an unliquidated demand for subrogation despite the notice accurately stating in one sentence that the demand was related to a subrogation claim). *Keithly* is analogous to this case because it involves a website where clicking on an offer to get a $10 discount actually was a negative option whereby after a free 7-day trial, if it was not cancelled, the person would receive an "Identity Product membership" for $19.95 each month. 2011 WL 538,480 at *4.  Once the option was clicked on, a portion of a page that was then displayed disclosed this fact amidst a lot of other information.  *Id.*  Despite this disclosure and despite finding that not everyone would be fooled by the marketing technique, the court found that a consumer protection act claim had been stated under the net impression standard.  *Id.* at 5-9.

This Court should hold that even if QuiBids had actually disclosed the material facts in multiple places buried in the voluminous QuiBids 101, FAQ and Terms & Conditions, the Site could still be found by a trier of fact to create a false impression, making it actionable under the OCPA.

2.     The Site Does Not Adequately Disclose that the Overwhelming Majority of Customers Using the Site Will Lose Money by Doing So.

In the Motion at 15-17, QuiBids points to five statements in the Site (three in QuiBids 101, one in the Terms & Conditions and one in the FAQ) by which QuiBids claims that "the Site discloses that users may lose money." This by itself is an admission by QuiBids that it has not disclosed that the overwhelming majority of its customers will lose money by using the Site. For a consumer, knowing that you "may" lose money (i.e., that is a mere possibility that you will do so) is a far cry from knowing you almost certainly will do so.

The first disclosure cited on page 15 of the Motion from QuiBids 101 (No. 16 in Exhibits 8 & 9 to the Vasquez Decl.) is merely a question and answer that reveals that a user loses the money spent on bids if he or she doesn't win an auction. The next statement at the bottom of page 15 of the Motion (No. 17 in Exhibits 8 & 9 to the Vasquez Decl.) from the Terms & Conditions only states that "Placing bids online at www.quibids.com frequently or repeatedly can incur high costs." The disclosures on page 16 and 17 of the Motion from QuiBids 101 and the FAQ state that QuiBids marks up the retail prices of the merchandise it sells, that purchasing bids doesn't guarantee a win, that it is not the norm to win items that are over $1,000 in cost with just a few bids as opposed to "a significant number of bids" and that "not everyone, however, will win the auction at a large bargain" (Nos. 18-21, respectively, in Exhibits 8 & 9 to the Vasquez Decl.).

These statements, even if read, do not come close to stating that the overwhelming majority of users of the Site will almost certainly lose money by doing so, especially given that the Home Page and the Registration Pages are designed to and do induce exactly the opposite impression.  And, of course, the probability that any user will have done the extensive clicking and scrolling to have read these statements spread about the voluminous Site is near zero. QuiBids has not adequately made this disclosure.

      3.    The Site Does Not Adequately Disclose the Percentage of Money Spent by Customers on the Site that Is Returned to the Customers in the Form of Merchandise.

If QuiBids were to disclose the percentage of money spent by customers on the Site that is returned to customers in the form of merchandise, which Plaintiff estimates to be approximately 33%, this would bring home in a very concrete way the realization that use of the Site is almost certainly a losing proposition.  QuiBids claims that it disclosed this fact in a combination of five statements on the Site (two in the Terms & Conditions and three in QuiBids 101).  Motion at 17-18.  Even if a persistent user read all these statements, the user would not gather from them that QuiBids takes in far more money from users than it gives out as merchandise, which virtually guarantees that use of the Site will result in a financial loss.

The two statements in the Terms & Conditions at page 17 of the Motion (Nos. 22-23, Exhibits 8 & 9 to Vasquez Decl.) that the odds of winning any particular auction are not calculable and that QuiBids makes no warranty as to results of the Site certainly do not convey this information.  Neither do the statements set forth at pages 17-18 of the Motion (Nos. 24-26, Exhibits 8 & 9 to Vasquez Decl.), that supposedly 30% of new customers get "a win" within a few days of using the Site and that the odds are small or highly unlikely of winning an expensive item with only a few bids placed, as opposed to a "significant number of bids."  None of these

statements convey the low percentage of dollars spent on the Site by users returned to them as merchandise or correct the false impression that users will routinely obtain valuable merchandise for a fraction of its retail cost.  Consequently, QuiBids has not adequately disclosed this omitted material fact.

      4.      The Site Does Not Adequately Disclose that Bidding on High-Ticket Items Before the Last 20 Seconds Originally Set for Bidding by QuiBids Will Inevitably Be Unsuccessful and, Thus, a Waste of Money.

QuiBids sets its auctions to start with an hour on the clock and shows on the Home Page and Registration Pages auctions of high-ticket items with more than 20 seconds left which have bids already placed on them.  SAC ¶ 18.  This constitutes an implied representation that bidding any time during that hour will not inevitably be futile, which is the case on high-ticket items.  In the Motion at 18-20, QuiBids points to seven statements set forth on the Site (five of which are in the QuiBids 101, one in the FAQ and one in the Terms & Conditions) that allegedly disclose "that it is best to bid in the last 20 seconds."  *See* Vasquez Decl., Exhibits 8 & 9 (Nos. 27-32).

The net impression left even after reading the statements is that it would be possible to win high-ticket items with a bid before the last 20 seconds.  The seven statements at most state that the "best strategy" for winning an auction is to place a bid within the last 15 seconds.  Saying that it is the "best strategy" to place a bid in the last 15 seconds is not the same as saying that bids placed before that time will inevitably be unsuccessful and, thus, a complete waste of money.  A reasonable finder of fact could still find QuiBids' failure to disclose the futility of doing so to be deceptive and unfair.

5.    The Site Does Not Adequately Disclose that Registered Users of the Site Will Be Directed to a Part of the Site that Offers Less Auction Items to Bid Upon than the Portion of the Site Accessed by Unregistered Potential Customers.

The display of tens of different auctions on the Home Page and the link to hundreds of more auctions from the Home Page before a potential customer registers constitutes an implied representation by QuiBids that registered users can expect to have access to those same hundreds of auctions, which directly feeds the perception that users can routinely win auctions and buy valuable merchandise at huge discounts. The more auctions there are to bid on, the better the odds appear. At page 20 of Motion, QuiBids points to two statements in the Terms & Conditions which would have to be accessed by clicking on the Terms & Conditions and then engaging in extensive scrolling (Nos. 33 and 34, Exhibits 8 and 9 to the Vasquez Decl.).

The statements pointed to by QuiBids certainly do not reveal that registered customers will only have access to a lesser set of auctions. The first statement is that "QuiBids reserves the right to show additional auctions to You at QuiBids' sole discretion." Saying that it may show **additional** auctions to a user is a far cry from saying that the user will receive a different and lesser set of auctions to bid in than those shown to the user before he registered. The second statement pointed to by QuiBids limits the number of user accounts per household and the number of auctions that can be won per user account. That in no way, shape or form informs a user that he will have access only to a different and lesser set of auctions than those he saw before he registered for the Site. In short, QuiBids has not even come close to making disclosure of this crucial material fact.

*B.    COMMON LAW FRAUD.*

QuiBids' supposed disclosures do not save it from common law fraud liability for two reasons. First, even if the supposed disclosures buried throughout the Site did disclose the omitted material facts (they do not), they still would not constitute sufficient disclosure to avoid

liability under the "buried facts" doctrine.  Second, as explained above in connection with the OCPA, QuiBids' supposed disclosures do not actually disclose the omitted material facts.

Plaintiff could find no Oklahoma case law on whether a defendant can escape constructive fraud (fraud by omission) by virtue of selected, fragmented disclosures buried within a larger document where an ordinary person exposed to the documents would end up with a false impression.  Plaintiff suggests that this Court should find that Oklahoma would follow the holding of the Supreme Court in *Donaldson* that fraud may be found where a document as a whole is misleading, even though every sentence separately considered is literally true and despite the fact that exceptionally acute sophisticated readers might have been able to decipher the true nature of what the defendant was offering.  333 U.S. at 188 & 189.

Similarly, in the context of the federal securities fraud statutes, the courts have applied the "buried facts" doctrine to hold that disclosures made in a fragmented fashion and buried in voluminous documents do not prevent liability for fraud by omission.  *Kennedy v. Tallant*, 710 F.2d 711, 720 (11th Cir. 1983) (separate statements spread across multiple pages of a prospectus that would have to be put together in order to understand the material fact were so fragmented that the average person would not understand their import and therefore did not constitute sufficient disclosure); *Blanchette v. Providence & Worcester Co.*, 428 F. Supp. 347, 353 (D. Del. 1977) (disclosure in prospectus not adequate where it stated at beginning that acceptance of proposed tender offer would leave shareholders with "similar voting rights" and information on the second from the last page indicated acceptance of the offer would actually substantially dilute those rights); *Nat'l Home Products, Inc. v. Gray*, 416 F. Supp. 1293, 1315-16 (D. Del. 1976) (information regarding litigation between a company and its former president was inadequately disclosed because it was "segmented into three parts, each presented in a different place in the

documents provided shareholders"); *Cone v. American Metal Climax, Inc.*, 322 F. Supp. 1331, 1362-63 (E.D. Pa. 1971) (200 page prospectus explaining proposed merger did not constitute adequate disclosure because very crucial information regarding the directors' conflicts of interest and the investment advisors' lack of independence appeared in appendices near the end of the document while page two contained the advisors' opinion that the transaction was fair in bold-faced type).

As described above, that is exactly what happened here. The Home Page and Registration Pages of the Site make numerous statements that would lead an ordinary person to believe that a typical user could expect to easily win multiple auctions and purchase valuable merchandise at huge discounts and thereby derive significant financial benefits from use of the Site. QuiBids' claim is that through extensive clicking and scrolling to tens of different places on its voluminous website (which, when printed out, constitute documents totaling close to 200 pages) a user could figure out the truth about use of the Site – that virtually anyone who uses the Site will end up financially worse off for having done so. Pursuant to the buried facts doctrine, this Court should hold that because a jury could find that the net impression left by the Site is false, even if QuiBids had disclosed the information which Plaintiff contends is omitted (it did not), a jury could find that QuiBids did not make sufficient disclosure to avoid common law fraud liability.

Notably, however, as set forth above regarding the OCPA, the purported disclosures by QuiBids, even when read together, do not actually disclose the material facts. For that reason as well, the Court should hold that QuiBids cannot escape liability for common law fraud based upon its supposed disclosures.

## IV.

### PLAINTIFF HAS SUFFICIENTLY PLED CLAIMS
### UNDER THE OCPA BASED ON QUIBIDS' OMISSIONS

*A.*   *THE OCPA MAKES QUIBIDS' OMISSIONS ACTIONABLE WITHOUT ANY COMMON LAW DUTY TO DISCLOSE ON THE PART OF QUIBIDS.*

QuiBids asks the Court to dismiss Plaintiff's OCPA claims on the basis that it had no duty to disclose the alleged missing information.  Motion at 21-23.  It cites in support *Parks v. AT&T Mobility, LLC*, No. CIV-09-212, 2010 WL 830000 (W.D. Okla. Mar. 4, 2010) ("*Parks I*"), although it admits:  (1) that such case does not actually hold that an omission claim under the OCPA must be based upon a pleading of a common law duty to disclose, and (2) that no Oklahoma case has so held.  Motion at 21-23.  Then, it cites seven cases (one in the text and six in a footnote) under other states' consumer protection acts allegedly holding that omission claims can only be maintained if there is an affirmative common law duty to disclose, and it asks the Court to hold that the same rule applies under the OCPA.

An examination of the wording of the OCPA, its liberal construction by the Oklahoma Supreme Court and the second decision by this Court in *Parks* (which QuiBids failed to cite to this Court) shows that Plaintiff need not allege a common law duty of disclosure in order to properly plead claims under the OCPA based upon omissions and that Plaintiff has more than sufficiently pled facts supporting "deceptive" and "unlawful" conduct on the part of QuiBids. Further, ample case law from other jurisdictions supports such a holding.

OCPA § 753(20) declares it unlawful for a person, in the course of the person's business, to commit "an unfair or deceptive trade practice as defined in Section 72 of this title."  15 OKLA. STAT. § 753(20).   OCPA § 752(13) defines "deceptive trade practice" to mean "a misrepresentation, **omission** or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person."  15 OKLA. STAT. § 752(13)

(emphasis added).   The inclusion of the term "omission" demonstrates that the Oklahoma Legislature did not intend to import the common law requirement of a common law duty to disclose based upon a special relationship or affirmative representations which by themselves would be misleading.  If it had, it could have just included "misrepresentation" in the statute.  To hold as argued by QuiBids would render meaningless the Legislature's inclusion of "omission."

In OCPA § 752(14), "unfair trade practice" is defined to mean "**any** practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." 15 OKLA. STAT. § 752(14) (emphasis added).  Use of the phrase "any practice" is consistent with an omission being actionable without regard to the existence of a common law duty to disclose.  Again, the Oklahoma Legislature manifestly used very broad language which QuiBids asks the Court to simply ignore.

Significantly, as set forth above, the Oklahoma Supreme Court has explained that the OCPA was designed to parallel and supplement the Federal Trade Commission Act and was based on the uniform acts offered for that purpose by FTC.  *Patterson*, 19 P.3d at 846.  The Court went on to say that, "[b]ecause the OCPA is remedial in nature, it is to be liberally construed to effectuate its underlying purpose." *Id.*  When added to the literal wording of the statute, this strongly suggests that the OCPA should be interpreted to allow omissions to constitute deceptive and unfair trade practices without regard to any common law duty of disclosure.

The two decisions by this Court in *Parks* strongly support that.  In *Parks I*, the Court dismissed the OCPA claims with leave to amend without stating that a duty to disclose had to exist under the OCPA as it had held with common law fraud. 2010 WL 830000, at *4.  Rather, the Court held that the plaintiff had not sufficiently alleged the making of a false statement or an

omission and had not stated facts that suggested the defendants had engaged in a practice that could reasonably be expected to deceive a consumer or alleged unethical or oppressive conduct. *Id.*

This Court heard another motion to dismiss after an amended complaint had been filed, which decision QuiBids notably failed to point out to the Court. *Parks v. AT&T Mobility, LLC*, No. CIV-09-212-D, 2011 WL 102543 (W.D. Okla. Jan. 12, 2011) (*"Parks II"*). In the amended complaint, the plaintiff alleged that the rate plan documents were drafted in such a manner to conceal from reasonable customers, including plaintiff, the exorbitant overage charges that they could incur if they exceeded the plan's 5 gigabyte data limit and that defendant knew such limit included in the monthly base rate was likely to be exceeded (which plaintiff and other customers would not know) and did not disclose the huge magnitude of the charges for exceeding that limit. *Id.,* at *1. This Court found that the plaintiff had identified the facts on which he relied "to establish Defendants made a material omission of information that deceived and reasonably can be expected to deceive a consumer." *Id.,* at *4. The Court also found that the facts identified were sufficient to allege that defendant's practice was unscrupulous and substantially injurious to consumers and thus could constitute unfair trade practices. *Id.*

Notably, unlike its discussion of common law fraud, the Court did not find that there had to be a common law duty to disclose for the omission to be actionable under the OCPA. *Id.* Rather, there needed only to be a material omission of information that deceived or could reasonably be expected to deceive a consumer, which it found to be the case. *Id.*

In this case as well, Plaintiff had no need to allege facts supporting a common law duty of disclosure. And, if the allegations in *Parks II* that customers could unknowingly expose themselves to very large charges were sufficient to allege violations of the OCPA, then

Plaintiff's allegations that QuiBids' omissions lead consumers to lose money in futile attempts to win prizes sufficiently alleges violations of the OCPA.

To the extent the Court finds persuasive decisions interpreting other states' consumer protection acts, numerous courts have held that such remedial statutes should be liberally construed and, thus, that omissions can constitute deceptive or unfair acts without regard to the existence of a common law duty of disclosure. *See, e.g., V.S.H. Realty, Inc. v. Texaco, Inc.*, 575 F.2d 411, 417 (1st Cir. 1985) (holding Massachusetts' consumer fraud statute makes actionable the failure to disclose a material fact without regard to a common law duty to disclose because the statute is intended to be beyond the scope of a common law action for fraud and deceit); *In Re Saturn L-Series Timing Chain Products Liab. Lit.*, MDL No. 1920, 2008 WL 4866604, at *22 (D. Neb. Nov. 7, 2008) (holding that because common law standards do not apply to Nebraska Consumer Protection Act, the Court would decline to impose a "duty to disclose" in order for a plaintiff to establish a fraudulent omission claim under the Act); *Morris v. ADT Security Services*, 580 F. Supp. 2d 1305, 1310 (S.D. Fla. 2008) (holding common law duty to disclose is not an element of an omission claim under the Florida Deceptive and Unfair Trade Practices Act, which is intended to be read broadly and liberally construed); *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E. 2d 584, 595 (Ill. 1996) (holding it unnecessary to plead a common law duty to disclose in order to state a valid omission claim under the Illinois consumer fraud statute).

B.     *IF NECESSARY, PLAINTIFF HAS ALLEGED A COMMON LAW DUTY TO DISCLOSE.*

In the unlikely event the Court holds that a common law duty to disclose must exist in order for omissions to be actionable under the OCPA, Plaintiff has sufficiently alleged facts to support such a duty in the SAC (and in the FAC by incorporation of the Home Page and Registration Pages). The argument for same is set forth below in the section regarding common law fraud.

**V.**

**PLAINTIFF SUFFICIENTLY ALLEGES A DUTY TO
DISCLOSE FOR PURPOSES OF COMMON LAW FRAUD**

The SAC expressly alleges a common law duty to disclose on the part of QuiBids in two

respects:  (1) representations by QuiBids which create a false impression in the absence of full

disclosure; and (2) "peculiar circumstances" between the parties.  The FAC likewise sufficiently

alleges a common law duty to disclose based upon the incorporation into the FAC of the entire

Site, including the Home Page and Registration Pages, as QuiBids correctly states in the Motion

at 5-7.

The Oklahoma Supreme Court has held that:

> A duty to speak may arise from partial disclosure, the speaker being under a duty
> to say nothing or to tell the whole truth.  One conveying a false impression by the
> disclosure of some facts and the concealment of others is guilty of fraud even
> though his statement is true as far as it goes, since such concealment is in effect a
> false representation that what is disclosed is the whole truth.

*Varn v. Maloney*, 516 P.2d 1328, 1332 (Okla. 1973) (*quoting Deardorf v. Rosenbusch,* 206 P.2d

996, 998 (Okla. 1949)).

Furthermore, the Oklahoma Supreme Court has held that in determining whether there is

a duty to speak, consideration must be given to the situation of the parties and the matters in

which they are dealing.  *Silk v. Phillips Petroleum Co.,* 760 P.2d 174, 179 (Okla. 1988).  It

further held that on "account of peculiar circumstances" there can be a positive duty to speak on

one of the parties and if such a person remains silent to his benefit and to the detriment of the

other party, the failure to speak constitutes fraud.  *Id.*

In this case, as set forth above, the Home Page and Registration Pages are designed to

and do convey, through the use of only partial disclosure, an incredibly false impression – that

users of the Site will routinely win the right to buy valuable merchandise at significant discounts

and, thus, will benefit financially from use of the Site.  The impression is also given that it is possible to win auctions of high-ticket items by bids made before the last 20 seconds originally set for bidding by QuiBids and that a registered user will have access to the same set of hundreds of auctions shown to potential customers who visit the Home Page and Registration Pages.

In contrast to that impression, the overwhelming majority of customers using the Site will lose money doing so, a low percentage of the money spent by users on the Site will be returned in the form of merchandise (approximately 33%), bids placed before the last 20 seconds originally set for an auction will be totally wasted, and users will be actually sent to a portion of the Site offering a less desirable collection of auctions than are shown on the Home Page. Without disclosures related to these facts, the impression created by the Home Page and the Registration Pages is false.  Under Oklahoma law, the partial disclosure by QuiBids creating this false impression placed a duty on QuiBids to disclose the remaining facts necessary to correct the false impression.

As set forth in the SAC, there are also peculiar circumstances given the disparate knowledge and sophistication between Plaintiff and the other users of the Site and QuiBids which placed a duty on QuiBids to fully disclose the material facts.  QuiBids is a highly sophisticated entity regarding its Site and its practices with knowledge of exactly what percentages of users will win auctions and, particularly, what percentage will win high-ticket items, the percentage of money spent by users that is returned to them in the form of merchandise, the fact that bidding on high-ticket items before the last 20 seconds of an auction originally set by QuiBids is a complete waste of money and the placement of users into different parts of the Site with less available auctions than are shown on the Home Page.  Plaintiff and the other users of the Site, in contrast, have no way of knowing these particular facts which would be

so relevant to their decisions as to whether to use the Site at all, and if so, how.  This inequality of sophistication and knowledge imposed a duty to disclose on the part of QuiBids under the standards set forth in *Silk*.

*Parks II* offers a good analogy.  In that case, because of its superior technical knowledge, the defendant knew, while consumers did not, that the products its customers were using were very likely to exceed the amount of data provided for in the monthly base rate, but it did not disclose this fact.  2011 WL 102543 at *1-3.  Further, it did not disclose how huge the overcharges could be in a way that a consumer without sophisticated technical knowledge and the ability to perform multiple mathematical calculations could calculate.  *Id.*  This Court held that these allegations that the defendant possessed technical knowledge beyond what one would expect their customers to have imposed upon the defendant a duty under Oklahoma common law to disclose the material information needed to determine the true cost of its services.  *Id.* at *3.

This case too involves QuiBids' having technical knowledge of the true likelihood of Plaintiff and other users actually winning valuable items at significant discounts and actually obtaining merchandise worth more than what they spend on the Site, which information Plaintiff and the other customers could not possibly know.  It also involves the failure to disclose material information needed to determine the true costs associated with use of the Site.  Accordingly, QuiBids had a common law duty to disclose under Oklahoma law, as alleged in the SAC and the FAC (by incorporation of the Site).

## VI.

### THE UNJUST ENRICHMENT AND MONEY HAD AND RECEIVED CAUSES OF ACTION ARE NOT PURELY DERIVATIVE OF THE OTHER CAUSES OF ACTION AND SHOULD NOT BE DISMISSED

In the Motion at 24-25, QuiBids argues that Plaintiff's unjust enrichment and money had and received causes of action are purely derivative of its OCPA and common law fraud causes of action and should be summarily dismissed by the Court if it dismisses those causes of action.

Initially, because the Court should not dismiss the OCPA and fraud causes of action, it should not dismiss the unjust enrichment and money had and received causes of action, derivative or not.   However, in the unlikely event the Court were to dismiss all three of the OCPA and common law fraud causes of action, it should not summarily dismiss the unjust enrichment and money had and received causes of action, because they are not purely derivative of those causes of action.

Initially, the Oklahoma Supreme Court has held that where the remedy sought for unjust enrichment is restitution, a plaintiff need not show fraud or other wrongdoing on the part of a defendant in order to recover; rather, "innocent mispresentation or non-disclosure" alone will justify the restitution.  *Oklahoma Dept. of Securities v. Blair,* 231 P.3d 645, 659 (Okla. 2010) (holding innocent investors in Ponzi scheme who were net winners could be held liable for restitution to the victims of the Ponzi scheme).  Thus, even if its omissions and conduct did not amount to common law fraud or violations of the OCPA, QuiBids still could be liable for unjust enrichment.

The same holds true for money had and received.   While there is no Oklahoma case directly on point, since it is a purely equitable cause of action similar in nature to unjust enrichment, the same holding should apply.  Simply put, a defendant can be in possession of

money which, in equity and good conscience, it should not retain under the circumstances, even though the money was not obtained by fraud or violations of the OCPA. *See P&E Finance Co. v. Globe & Republic Ins. Co. of America*, 239 P.2d 1009, 1012 (Okla. 1952) (holding "the essential element in an action for the recovery of money had and received is defendant's possession of money belonging to plaintiff which defendant in law, equity and good conscience is not entitled to retain ...").

## VII.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, Lawrence A. Locke, individually and on behalf of all others similarly situated, respectfully requests the Court to grant them leave to file the Second Amended Class Action Complaint and deny any new motion to dismiss based thereon or grant leave to amend and deny the current motion to dismiss based thereon and to award them all such other and further relief, general or special, legal or equitable, to which they may be justly entitled.

DATED: March 25, 2011.

/s/ Roger L. Mandel
Roger L. Mandel
rmandel@beckham-mandel.com
Blake L. Beckham
bbeckham@beckham-mandel.com
Jose M. Portela
c2coast@aol.com
Sarita A. Smithee
ssmithee@beckham-mandel.com
**BECKHAM & MANDEL**
3400 Carlisle Street, Suite 550
Dallas, Texas 75204
Telephone: (214) 965-9300
Facsimile:  (214) 965-9301

Edward L. White
ed@edwhitelaw.com
**EDWARD L. WHITE, P.C.**
13924 Quail Pointe Drive, Suite B
Oklahoma City, OK 75134
Telephone: (405) 810-8188
Facsimile:  (405) 608-0971

Andrew Kierstead
kiersteadlaw@aol.com
**LAW OFFICE OF ANDREW S. KIERSTEAD**
1001 SW Fifth Ave., Suite 1100
Portland, OR 97204
Telephone: (508) 224-6246
Facsimile:  (508) 224-4356

Attorneys for Plaintiff and the Class

### Certificate of Service

On the 25th day of March, 2011, the foregoing Plaintiff's Response, and Brief in Support, to Motion to Dismiss With Brief in Support was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties of record.

/s/ Roger L. Mandel
Roger L. Mandel