**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| LAWRENCE A. LOCKE, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 5:10-cv-01277-F |
| QUIBIDS, LLC, | ) ) ) | |
| Defendant. | ) | |

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**

DATED: April 22, 2011

    Reid Robison, OBA #7692
    Michael D. McClintock, OBA #18105
    Tamara Schiffner Pullin, OBA #21462
    McAfee & Taft A Professional Corporation
    10th Floor, Two Leadership Square
    211 North Robinson Avenue
    Oklahoma City, OK  73102
    Telephone:   (405) 235-9621
    Facsimile:    (405) 235-0439

    **ATTORNEYS FOR QUIBIDS, LLC**

Defendant QuiBids, LLC respectfully submits this Reply Brief in Support of its Motion to Dismiss the First Amended Complaint [Doc. #20].

**INTRODUCTION**

Plaintiff answered the Motion to Dismiss the First Amended Complaint ("FAC") with **both** a Motion for Leave to file a Second Amended Complaint ("SAC") [Doc. #31] and a Response to the Motion to Dismiss [Doc. #29]. The Response explicitly relies on allegations from the **not-filed** SAC, essentially admitting that the FAC fails to adequately plead claims on which relief can be granted. If the SAC eventually is filed (contemporaneous herewith, QuiBids files its opposition to Plaintiff's request for leave to file the SAC), QuiBids will move to dismiss the SAC at the appropriate time. QuiBids does not accept Plaintiff's invitation to muddy the waters. In this Reply Brief, QuiBids looks only to the FAC, as should the Court in deciding the Motion to Dismiss.

Plaintiff's Response concedes: (i) the Court may consider the Site in ruling on the Motion; (ii) Plaintiff is bound contractually by the Terms & Conditions; (iii) injunctive relief is not available. Thus, this Reply focuses on the contested issues that the FAC fails to plead actionable claims under the Oklahoma Consumer Protection Act ("OCPA") or for fraud, unjust enrichment or money had and received because disclosures on the Site directly contradict the alleged omissions and Plaintiff received the benefit of his bargain.

Rather than respond to the long list of cases cited in the Motion (pp. 6-9) that specifically address the sufficiency of disclosures **on a website** (all of which demonstrate that QuiBids' disclosures defeat the OCPA and fraud claims), Plaintiff attempts to raise a new "net impression" standard that applies to traditional mail and print solicitations and

raises a so-called "buried facts" doctrine that applies in the securities fraud context. Neither theory has been adopted in Oklahoma, and neither is applicable in this context. Even if applicable, neither saves Plaintiff's claims because: (i) the FAC does not identify a single statement on the Site that creates an alleged false impression; and (ii) the disclosures on the Site are direct, explicit, easy to navigate, in same size font as the rest of the Site, agreed to by users (in the Terms & Conditions) and are not buried.

## ARGUMENT AND AUTHORITY

**A.   Neither the "Net Impression" Standard Nor the "Buried Facts" Doctrine Saves Plaintiff's Claims.**

The Response reveals a new theory on which Plaintiff attempts to rely in defense of the Motion to Dismiss: that the home and registration pages on the Site create an overall net impression that "users of the Site will **routinely** win the right to purchase valuable merchandise at significant discounts, such that the **overwhelming majority** of users will benefit financially from using the Site." Resp. at p. 3 (emphasis added). **Importantly, however, Plaintiff does not point to or suggest any language from the Site that supposedly creates this impression.** Certainly, there are no such allegations in the FAC.[1] Plaintiff's Response—but not the FAC—vaguely points to "colorful graphics and exciting verbiage" on the home and registration pages, but the entire Site contains the same color scheme, graphics and style of prose. In any event, Plaintiff fails to explain **how** any color, graphic or statement creates an alleged false impression. Resp. at p. 5.

---

[1] QuiBids reserves its arguments that the SAC fails to adequately plead facts to support an OCPA claim under the net impression standard until such time as the SAC is before this Court and QuiBids has the opportunity to move to dismiss same.

Plaintiff says that it is difficult to navigate to QuiBids 101, citing "a very small link … in white letters on a gray background … at the top of the Home Page." Resp. at p. 5. To the contrary, both QuiBids 101 and FAQ are a clickable link at the **top of every page** on the Site in the **same** size, type and color font as: Home, My QuiBids, Achievements, Register.



Clickable links to FAQ and Terms & Conditions appear at the **bottom of every page** on the Site, in the **same** size, type and color font as links to Register Now! and to Live Auctions.



Plaintiff admits that "the Terms & Conditions are also referenced on the First Registration Page" and that "a user has to click on a box agreeing to them and a link to them is provided" during the registration process. Resp. at p. 5. Thus, links to QuiBids 101, FAQ and Terms & Conditions are as conspicuous as the links to register and to view the auctions.

Plaintiff incorrectly says that the Site is too voluminous to find the relevant disclosures. To the contrary, the Table of Contents of QuiBids 101 [Doc 20-4, page 62] shows that QuiBids 101 is organized into four categories for ease of navigation. The Table of Contents for the FAQ [Doc. 20-6 & Doc 20-3 p. 59] similarly shows that the FAQ is organized into nine categories. These tables of contents, to which users are automatically directed when clicking on QuiBids 101 or Help, assist users in quickly finding information.

Plaintiff's statement that QuiBids 101 is 176 printed pages is misleading. First, printed pages are irrelevant to users navigating the Site. Second, 24 of the pages comprising Exhibit B to Guerts Declaration are actually the entirety of FAQ.[2] Third, 122 pages of Exhibit B are full pages of user questions and answers thereto, provided in addition to and **after** the text of the articles. [Doc. 20-3 at 4-6, 9-10, 12-15, 18-29, 31-49; Doc. 20-4 at 7-15, 17, 19-22, 24-45, 47, 49, 51, 53-56, 58; Doc. 20-5 at 1, 4, 6, 9-32, 34-37, 38-44, 47.] Thus, the substance of QuiBids 101 is contained on 30 printed pages.

These factual clarifications are important in analyzing Plaintiffs' new "net impression" and "buried facts" arguments.[3] In Donaldson v. Read Magazine, Inc., 333 U.S. 178 (1948), on which Plaintiff primarily relies, the Court found fraud in a mailing campaign that gave the overall impression that large prizes could be won simply by solving puzzles, when in reality the winners were determined by written essays. In so finding, the Court reasoned that the mailings at issue:

> constituted at the same time models of clarity and of obscurity – clarity in referring to prizes and to a "puzzle contest"; obscurity in referring to a remote possibility of a letter-essay contest. In bold type, almost an inch high, their advertisements referred to "$10,000 FIRST PRIZE PUZZLE CONTEST." Time after time they used the words "puzzle" and "puzzle contest." Conspicuous pictures of sample "puzzles" covered a large part

---

[2] *See* Doc. 20-3 at 50-68 and Doc. 20-4 at 1-5 (the FAQ were inadvertently included in Exh. B instead of in Exh. C). These 24 pages belie Plaintiff's speculation that when printed the FAQ would total in the hundreds of pages. Resp. at pp. 5-6.

[3] The theories are interwoven and based on the same mischaracterizations of the inaccessibility of disclosures on the Site. Although Plaintiff attempts to extend the "net impression" standard to its common law fraud claim (Resp. at 14), same has absolutely no application in that context, as the net impression standard arises out of the purpose of the FTC Act being the protection of consumers with the cardinal element thereof the reader's perspective, such that there is no element of intent or actual deception required to state a claim under the FTC Act. Fed. Trade Comm'n v. Sterling Drug, Inc., 317 F.2d 669, 674 (2d Cir. 1963). Conversely, intent and actual misrepresentation are elements of a fraud claim.

> of a page. [And, various examples and explanations of puzzles appeared throughout the advertisements.]

333 U.S. at 187. Conversely, the Court found that competitive letter-writing was only obscurely referred to "in small type" buried within the middle of one of ten rules and "was mentioned only as a remote and unexpected contingency." Id.

Applying that reasoning here, the Site does **not** state in large bold type once—let alone repeatedly—that the overwhelming majority of users will win auctions and enjoy significant financial benefits. Plaintiff has failed to identify a single statement appearing anywhere on the Site that allegedly creates such an impression. Rather, it is absolutely clear on any page of the Site that there is one winner per auction.[4] This is **not** a situation like Donaldson or the other cases Plaintiff cites[5] where a company has specifically advertised a service completely different from its actual offering. Rather, this is a situation like Kramer v. Unitas, where the court noted that "plaintiffs had failed to show that [defendants] made any representations, false or otherwise." 831 F.2d 994, 998 (11th Cir. 1987) (finding statements at issue are "sales talk, or puffing, which standing alone would not prove fraud").

Moreover, QuiBids's disclosures are conspicuous, repeated throughout the Site, and readily accessible in comparison to the one obscure disclosure at issue in *Donaldson* or

---

[4] Further, the fact that there is only one winner per auction is inherent and common knowledge.

[5] See, e.g., Keithly v. Intellius Inc., No. C09-1485-RSL, 2011 U.S. Dist. LEXIS 16861 (W.D. Wash. Feb. 8, 2011) (finding online marketing technique deceptive "because [the] scheme presents a subscription service to the consumer in such a way that a substantial portion of the population is not even aware that an offer has been made, much less accepted"); Kalwajtys v. Fed. Trade Comm'n, 237 F.2d 654 (7th Cir. 1956) (finding specific statements made in a door-to-door presentation to be actually false and not saved by semantic parsing of words); Fed. Trade Comm'n v. Stefanchik, 559 F.3d 924, 927-28 (9th Cir. 2009) (finding specific statements made in advertisements to be actually false).

other cases cited by Plaintiff.[6]  As discussed above, the areas of the Site containing the disclosures are clickable from every single page on the Site, in the same size font as the links to register and to view auctions.  The disclosures are made repeatedly in three different areas of the Site, in consistent-sized font, and are organized by category so that users may easily navigate the information contained in the Terms & Conditions, QuiBids 101 and FAQ.  These factors also prevent the so-called buried facts doctrine from applying here (if it has any application outside the context of securities fraud—Plaintiff cited no cases to indicate that it does).  This is not a situation—as in the prospectuses in the cases Plaintiff cited (Resp. at pp. 14-15)—where QuiBids makes inconsistent and partial statements in different areas of the Site that must be cobbled together to determine the actual truth.

### B.  In the Terms & Conditions, QuiBids 101, and FAQ, QuiBids Discloses Pertinent Facts that Disprove the Omissions Alleged in the FAC.

As the Motion to Dismiss details (Motion at pp. 9-20), QuiBids has disclosed throughout the Site—in the Terms & Conditions, QuiBids 101 and the FAQ—specific facts that belie the omissions on which Plaintiff bases his claims in the FAC.  That Plaintiff can spin an argumentative gloss to his alleged omissions that may not match perfectly with the precise verbiage used in QuiBids' disclosures does not lessen the impact of the facts actually disclosed.  For instance, obviously, QuiBids does not include on the Site Plaintiff's argumentative gloss that "the overwhelming majority of customers using the Site will lose money"—as that would be **false**.  QuiBids has disclosed facts of how a consumer may lose

---

[6] See, e.g., Fed. Trade Comm'n v. Cyberspeace.com LLC, 453 F.3d 1196 (9th Cir. 2006) (disclosure in very small print on back of check insufficient to counter net impression created by mailing a check addressed to consumer with an invoice indicating that a refund was due on an existing account); Keithly, 2011 U.S. Dist. LEXIS 16861 (noting disclosure appeared once in multi-click process as "the least conspicuous element on the page").

money on the Site.  That disclosure of facts is sufficient to disprove the alleged omission. The same holds true for the remaining alleged omissions and QuiBids' disclosure of **facts** that address the issue raised by each alleged omission.

### C.    The FAC Does Not Allege Facts to Support a Duty to Disclose.

Oklahoma courts recognize that fraud claims based on an omission require the existence of a duty to disclose.  See Parks v. AT&T Mobility, LLC, Case No. CIV-09-212-D, Order, Doc. # 70 (W.D. Okla. Jan. 12, 2011) "Parks II" at 5 (citing various cases as support).  As outlined in the Motion, the FAC fails to allege a single fact to demonstrate that QuiBids had a duty to disclose any of the omitted matter alleged therein.

The Motion relied on Parks I (CIV-09-212-D, Doc. # 47(W.D. Okla. Mar. 4, 2010)), rather than Parks II, because the redeeming facts in the amended complaint before the Court in Parks II are missing from the FAC at issue herein, such that Parks I is the more analogous case.  For instance, in Parks I, the pleading of fraud and violation of the OCPA rested on an allegation that the defendant failed to inform customers of "astronomical additional charges" that could apply.  Parks I at 2-3.  In analyzing the allegations and setting aside those that were conclusory, the Court found that Plaintiff failed to identify any false statement or to suggest an actionable omission (Id. at 5) and, to the extent an omission was alleged, plaintiff failed to allege "factual circumstances to support a claim of fraudulent nondisclosure" and left the reader to speculate on the basis of the claims (Id. at 7).  In contrast, in Parks II, the same claims rested on allegations that:  materials given to customers were "deliberately misleading and deceptive" because they were "drafted in such a manner as to conceal from reasonable customers including Plaintiff the exorbitant overage

charges that the customer could incur"; defendants devised "cryptic" marketing materials that conveyed the overage charges "in a calculatingly deceptive manner" that required consumers to have sophisticated technical knowledge to parse; defendants failed to disclose specific identified facts (not argumentative gloss); and that defendants had a duty to disclose arising from superior knowledge.  Parks II at 2.  The FAC at issue in the Motion to Dismiss does not come close to alleging the factual support that the court relied upon in Parks II; rather, the FAC contains precisely the vague and speculative allegations that the court found insufficient in Parks I.

That the FAC references the Site generally, without pointing to particular language on the Home or Registration Pages, does **not** relieve Plaintiff of his pleading burden.  The Response suggests that simply incorporating the Home Page and Registration Pages into the FAC satisfies Plaintiff's obligation to plead facts to support a duty to disclose or to otherwise overcome the clear deficiencies in the FAC.  Resp. at p. 19, 20.  Not surprisingly, Plaintiff fails to cite any authority to support this unfounded suggestion, one that has been specifically rejected by the Seventh Circuit.  See Gross v. AIDS Research Alliance-Chicago, 415 F.3d 601, 605 (7th Cir. 2005) (rejecting suggestion that an "incorporation by reference" in an amended complaint was enough to clarify claims; such would require the judge to have read through the incorporated materials "quite carefully" in order to "piece together a theory" of recovery, but "it was not incumbent upon the district judge to become an expert" in the incorporated materials).  In addition, Plaintiff's suggestion would be contrary to Twombly and Iqbal, which require factual allegations to "raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The "mere

metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). Simply incorporating into a Complaint an entire website by reference to the site generally in hopes that the Court will find a basis for the alleged claims somewhere in the site is the precise sort of speculative pleading that is prohibited. Because the FAC fails to specifically plead facts to support Counts I, II and III—by failing to plead facts that demonstrate a duty to disclose—the Court should dismiss the FAC as to those claims.[7] For instance, the FAC fails to allege any peculiar circumstance giving rise to a positive duty to speak and fails to identify a partial disclosure that is rendered misleading by alleged missing information. In fact, as the Motion details, the Site discloses facts to counter the argumentative gloss on which Plaintiff attempts to rest his alleged omissions.

QuiBids acknowledges that no Oklahoma court has taken up the issue, but urges this Court to follow those jurisdictions that have held under comparable consumer protection acts that a plaintiff purporting to state a claim based on an alleged omission must show an affirmative duty to disclose. Motion at p. 23. Plaintiff's unsupported statutory construction argument is to no avail. Resp. at p. 17. Plaintiff suggests that reference to "omission" in the definition of "deceptive trade practices" and reference to "any" in the definition of "unfair trade practices" reveal the legislature's intent to allow any omission regardless of materiality

---

[7] Again, QuiBids reserves its arguments that the SAC fails to adequately plead facts to support a duty to disclose until such time as the SAC is before this Court and QuiBids has the opportunity to move to dismiss same.

and absent any duty to disclose to be actionable under the OCPA.  No Oklahoma court has ever so suggested, and this Court should refrain from such a loose extension.  Even <u>Parks II</u> recognizes that an omission must be material under the OCPA.  <u>Parks II</u> at 6.  Moreover, in looking at the entirety of the relevant definitions, the omission must be one that is likely to deceive (15 Okla. Stat. § 752(13)), and to be considered unfair, "any practice" must be "immoral, unethical, oppressive, unscrupulous, or substantially injurious" (15 Okla. Stat. § 752(14)).  Absent a duty to disclose, Plaintiff fails to explain how an omission can deceive or be considered unscrupulous.

### D.     The Unjust Enrichment and Money Had and Received Claims Fail.

Plaintiff's claims for unjust enrichment and money had and received are pleaded in a manner that explicitly relies on the same insufficient factual allegations as the fraud and OCPA claims and, thus, should fail along with those claims.  <u>Brill v. Walt Disney Co.</u>, 2010 WL 5011594, *5 (Okla. Civ. App. Aug. 23, 2010).

Plaintiff's citation to <u>Okla. Dept of Securities v. Blair</u>, 231 P.3d 945 (Okla. 2010), involving a Ponzi scheme, is to no avail, Because unlike the "winners" in that case, QuiBids does not participate in the bidding and does not win any auction.  Moreover, Plaintiff fails to address the argument that Plaintiff's entering into an agreement with QuiBids, by agreeing to the Terms & Conditions, and receiving the benefit of his bargain by winning auctions, deprives him of the argument that he has suffered inequitable circumstances.  <u>Monus v. Colorado Baseball 1993, Inc.</u>, 103 F.3d 145 (10th Cir. 1996).

### CONCLUSION

For the foregoing reasons, Plaintiff's First Amended Complaint should be dismissed.

        Respectfully submitted,


*/s/ Michael D. McClintock*
Reid Robison, OBA #7692
Michael D. McClintock, OBA #18105
Tamara Schiffner Pullin, OBA #21462
McAfee & Taft A Professional Corporation
10th Floor, Two Leadership Square
211 North Robinson Avenue
Oklahoma City, OK  73102
Telephone:   (405) 235-9621
Facsimile:   (405) 235-0439

**ATTORNEYS FOR QUIBIDS, LLC**

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 22, 2011 I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following registrants:

**EDWARD L. WHITE, P.C.**
9301 Cedar Lake Ave., Suite 200
Oklahoma City, OK  73114
Telephone:   (405) 810-8188
Facsimile:    (405) 608-0971
Email:         ed@edwhitelaw.com

Roger L. Mandel
Blake L. Beckham
Jose M. Portela
Sarita A. Smithee
**BECKHAM & MANDEL**
3400 Carlisle Street, Suite 550
Dallas, TX  75204
rmandel@beckham-mandel.com
bbeckham@beckham-mandel.com
c2coast@aol.com
ssmithee@beckham-mandel.com

*s/ Michael D. McClintock*