## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

LAWRENCE A. LOCKE, MATTHEW ) 
BROWN and CHRISTOPHER LLOYD, ) 
individually and on behalf of all others ) 
similarly situated, ) 
        ) 
                Plaintiffs, ) 
        ) 
v. )       Case No. 5:10-cv-01277-F 
        ) 
QUIBIDS, LLC, *et al.* ) 
        ) 
                Defendants. ) 
        ) 

---

## QUIBIDS' MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED
## COMPLAINT AND BRIEF IN SUPPORT

---

DATED:  November 5, 2012

Reid Robison, OBA #7692
Michael D. McClintock, OBA #18105
McAfee & Taft A Professional Corporation
10th Floor, Two Leadership Square
211 North Robinson Avenue
Oklahoma City, OK 73102
Telephone: (405) 235-9621
Facsimile:   (405) 235-0439

Of counsel:

John H. Beisner, *pro hac vice application forthcoming*
Jessica D. Miller, *pro hac vice application forthcoming*
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: (202) 371-7000
Facsimile:   (202) 393-5760

**ATTORNEYS FOR DEFENDANTS**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

BACKGROUND ......................................................................................................... 2

ARGUMENT & AUTHORITIES.................................................................................. 4

I.     PLAINTIFFS' CLAIM THAT QUIBIDS ENGAGED IN "UNFAIR
       TRADE PRACTICES' UNDER THE OCPA (COUNT I) FAILS
       AS A MATTER OF LAW ................................................................................. 5

       A.     Plaintiffs Have Failed to Allege Facts Capable of Establishing That
              QuiBids Conducts "Commercial Gambling." ....................................... 6

              1.     Plaintiffs Do Not Allege Facts Showing That
                     QuiBids Receives Bets.................................................... 6

              2.     Plaintiffs Do Not Allege Facts Showing That
                     QuiBids Operates A Lottery ....................................... 9

       B.     Plaintiffs Do Not Allege Any Actionable Damages............................. 12

       C.     Plaintiffs Are Barred From Pursuing Claims Based on QuiBids' Alleged
              Gambling Activities Under The Doctrine Of *In Pari Delicto* ............... 14

II.    PLAINTIFFS' CLAIMS FOR VIOLATION OF THE OCPA BY
       DECEPTIVE TRADE PRACTICES (COUNT II) AND COMMON
       LAW FRAUD (COUNT III) ALSO FAIL ....................................................... 16

III.   PLAINTIFFS' CLAIMS FOR MONEY HAD AND RECEIVED
       (COUNT IV) AND UNJUST ENRICHMENT (COUNT V)
       SHOULD BE DISMISSED .............................................................................. 20

IV.    DISMISSAL SHOULD BE WITH PREJUDICE ........................................... 20

CONCLUSION ......................................................................................................... 21

## TABLE OF AUTHORITIES

**Cases**

*4S Dev. Co., Ltd., LLLP v. FDIC,*
  No. CIV-10-299-M, 2011 WL 5179797 (W.D. Okla. Nov. 1, 2011) ....................................17

*Adell v. Macon County Greyhound Park, Inc.,*
  785 F. Supp. 2d 1226 (M.D. Ala. 2011) ........................................................ 13, 14

*Adkins v. Bristol-Myers Squibb Co.,* No. 3:07-cv-00901 (FLW),
  2009 WL 5216986 (D.N.J. Dec. 30, 2009)................................................................18

*Allen v. Zavaras,*
  430 F. App'x 709 (10th Cir. 2011) ...........................................................................4

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)................................................................................................4

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007)................................................................................................4

*Bixler v. Foster,*
  596 F.3d 751 (10th Cir. 2010)................................................................................4

*Blount Fin. Servs., Inc. v. Walter E. Heller & Co.,*
  819 F.2d 151 (6th Cir. 1987)................................................................................17

*Bowlan v. Lunsford,*
  54 P.3d 666 (Okla. 1936)......................................................................................15

*Brannon v. Munn,*
  68 P.3d 224 (Okla. Civ. App. 2002)......................................................................12

*Brill v. Walt Disney Co.,*
  2010 WL 5011594 (Okla. Civ. App. Aug. 23, 2010).............................................20

*Brinley v. Williams,*
  114 P.2d 463 (Okla. 1941).....................................................................................15

*Brown v. Chaffee,*
  612 F.2d 497 (10th Cir. 1979)...............................................................................17

*Brown v. N. Cent. F.S., Inc.,*
  173 F.R.D. 658 (N.D. Iowa 1997) .........................................................................19

*De Witt Motor Co. v. Bodnark*,
    169 N.E.2d 660 (Ohio Ct. Com. Pl. 1960) ................................................................12

*Elias v. Hewlett-Packard Co.*,
    No. 12-CV-00421-LHK, 2012 WL 4857822 (N.D. Cal. Oct. 11, 2012)................................18

*Estate of Scott v. Scott*,
    907 F. Supp. 1495 (M.D. Ala. 1995) ........................................................................17

*Evans v. Pearson Enters., Inc.*,
    434 F.3d 839 (6th Cir. 2006)................................................................................18

*Gandhi v. Sitara Cap. Mgmt., LLC*,
    689 F. Supp. 2d 1004 (N.D. Ill. 2010) ....................................................................19

*Ginsberg v. Centennial Turf Club, Inc.*,
    251 P.2d 926 (Colo. 1952)..................................................................................10

*Green v. Aztar Corp.*,
    No. 02-C-3514, 2003 WL 22012205 (N.D. Ill. Aug. 22, 2003)................................14

*Hardin v. NBC Universal, Inc.*,
    660 S.E.2d 374 (Ga. 2008) ....................................................................................8

*Harris v. Missouri Gaming Comm'n*,
    869 S.W.2d 58 (Mo. 1994)............................................................................10, 11

*Harrison v. Leviton Mfg. Co., Inc.*,
    No. 05-CV-0491-CVE-FHM, 2006 WL 2990524 (N.D. Okla. Oct. 19, 2006) ...................13

*Hindbaugh v. Bd. of Cnty. Comm'rs of Washita Cnty.*,
    No. CIV-06-1240-C, 2008 WL 2944924 (W.D. Okla. July 24, 2008) ....................21

*Humphrey v. Viacom, Inc.*,
    No. 06-2768, 2007 WL 1797648 (D.N.J. June 20, 2007)............................................9

*In re Travel Agent Comm'n Antitrust Litig.*,
    583 F.3d 896 (6th Cir. 2009)................................................................................5

*Kelley v. Mid-Am. Racing Stables, Inc.*,
    139 F.R.D. 405 (W.D. Okla. 1990) ........................................................................16

*Kelly v. First Astri Corp.*,
    72 Cal. App. 4th 462 (1999) ................................................................................15

*Khalik v. United Air Lines*,
    671 F.3d 1188 (10th Cir. 2012)..............................................................................4

*Koch v. Koch Indus., Inc.*,
    203 F.3d 1202 (10th Cir. 2000) ............................................................ 5, 17

*Larson v. Agos*,
    No. 11-cv-00986-CMA-CBS, 2011 WL 2473078 (D. Colo. June 22, 2011) ......................... 4

*Las Vegas Hacienda, Inc. v. Gibson*,
    359 P.2d 85 (Nev. 1961) ................................................................. 9

*Lee v. Enter. Fin. Grp.*,
    No. CIV-08-1221-M, 2009 WL 1362605 (W.D. Okla. May 14, 2009) ...................... 17

*Major League Baseball Props., Inc. v. Price*,
    105 F. Supp. 2d 46 (E.D.N.Y. 2000) ....................................................... 14

*Manning v. Creative Headquarters, LLC*,
    No. 11-C-2203 (N.D. Ill. Mar. 30, 2012) .................................................. 8

*Mendelsohn v. BidCactus, LLC*,
    No. 3:11-CV-1500(JCH), 2012 WL 1059702 (D. Conn. Mar. 28, 2012) ..................... 8

*Misner v. Knapp*,
    9 P. 65 (Ore. 1885) ..................................................................... 7

*O'Malley v. O'Neill*,
    887 F.2d 1557 (11th Cir. 1989) ......................................................... 17

*Patterson v. Beall*,
    19 P.3d 839 (Okla. 2000) ........................................................... 12, 16

*People v. Postma*,
    69 Cal. App. Supp. 2d 814 (1945) ........................................................ 10

*Ridley Packing Co. v. Holliday*,
    467 P.2d 480, 482 (Okla. 1970) ......................................................... 11

*State ex rel. Draper v. Lynch*,
    137 P.2d 949 (Okla. 1943) ............................................................... 9

*State v. Am. Holiday Ass'n, Inc.*,
    727 P.2d 807 (Ariz. 1986) ............................................................... 9

*State v. Duc Hong Pham Tran*,
    172 P.3d 199 (Okla. Crim. App. 2007) .................................................... 11

*State v. Khalsa*,
    542 N.W.2d 263 (Iowa Ct. App. 1995) .................................................... 10

*Stephenson v. F.B.I.*,
No. 2:09-CV-905-CW-SA, 2010 WL 2024704 (D. Utah Mar. 26, 2010).................................4

*Terry v. Nuvell Credit Corp.*,
No. CIV-06-0851-F, 2007 WL 2746919 (W.D. Okla. Sept. 20, 2007) (Friot, J.).................17

*Tibbetts v. Sight 'N Sound Appliance Ctrs., Inc.*,
77 P.3d 1042 (Okla. 2003)................................................................................................13

*Tice v. Tice*,
672 P.2d 1168 (Okla. 1983) ..............................................................................................16

*Tillman v. Shofner*,
90 P.3d 582 (Okla. Civ. App. 2004)...................................................................................15

*Toomey v. Penwell*,
245 P. 943 (Mont. 1926)......................................................................................................7

*U.S. Postal Serv. v. Amada*,
200 F.3d 647 (9th Cir. 2000)..............................................................................................12

*United States ex rel. Lacy v. New Horizons, Inc.*,
348 F. App'x 421 (10th Cir. 2009) ....................................................................................17

*W. Telcon, Inc. v. Cal. State Lottery*,
917 P.2d 651 (Cal. 1996) ............................................................................................ 6, 10

*Walls v. Am. Tobacco Co.*,
11 P.3d 626 (Okla. 2000)...................................................................................................13

*Whirlpool Corp. v. Henry*,
110 P.3d 83 (Okla. Ct. Crim. App. 2005)..........................................................................11

*Whitlock v. Bob Moore Cadillac, Inc.*,
938 P.2d 737 (Okla. 1997).................................................................................................13

**Statutes**
Okla. Stat. tit. 15, § 752.................................................................................................. 6, 18

Okla. Stat. tit. 15, § 753....................................................................................................14

Okla. Stat. tit. 15, §§ 751-765.............................................................................................1

Okla. Stat. tit. 21, § 1051 ..................................................................................................11

Okla. Stat. tit. 21, § 981......................................................................................................7, 8

Okla. Stat. tit. 21, § 982.........................................................................................................................6

Okla. Stat. tit. 21, §§ 981-988.............................................................................................................7

**Other Authorities**
1999 OK AG 5 ......................................................................................................................................7

BLACK'S LAW DICTIONARY 231 (6th ed. 1990) .........................................................................12

WEBSTER'S DICTIONARY 225 (9th ed. 1986) ............................................................................12

**Rules**
Fed. R. Civ. P. 8(a) ....................................................................................................... 1, 21

Fed. R. Civ. P. 9(b).................................................................................................. 1, 5, 21

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 1, 21

## MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 8(a), 9(b) and 12(b)(6), Defendants QuiBids Holdings LLC and QuiBids LLC (together "QuiBids"), move to dismiss the Third Amended Complaint ("TAC") [Dkt. No. 87] filed by Plaintiffs, Lawrence A. Locke ("Locke"), Matthew Brown ("Brown"), and Christopher Lloyd ("Lloyd") (together "Plaintiffs").   In support of their Motion, QuiBids submits the following brief.

## BRIEF IN SUPPORT OF MOTION TO DISMISS

### INTRODUCTION

Plaintiffs are three consumers who used the Quibids' website and now seek refunds of the money they spent bidding on various items.  Plaintiffs allege that they are entitled to such refunds because Quibids allegedly failed to disclose, *inter alia*, the likelihood of winning bids on the site and the ideal strategies for bidding on the site.  Plaintiffs also allege that the site is an illegal gambling operation.  Based on these allegations, Plaintiffs assert claims for alleged violations of the Oklahoma Consumer Protection Act ("OCPA"), Okla. Stat. tit. 15, §§ 751-765, common law fraud, money had and received, and unjust enrichment.

Plaintiffs' claims are premised upon two theories:  (1) QuiBids' business constitutes illegal commercial gambling as defined by Oklahoma's Criminal Code; and (2) QuiBids made misrepresentations about its online auctions to users that caused them to use the website when they otherwise would not have.  These allegations all fail as a matter of law.

*First*, Plaintiffs cannot proceed on a theory that QuiBids violated the OCPA by engaging in illegal gambling because QuiBids' auctions do not constitute gambling under Oklahoma law.  Moreover, even if QuiBids' conduct could be considered gambling, it would

not give rise to a private cause of action under the OCPA because plaintiffs willingly participated in the alleged gambling activities and do not allege actionable injury.

**Second**, Plaintiffs' allegation that QuiBids violated the OCPA and engaged in fraud by misrepresenting various aspects of its online auctions also fails because Plaintiffs have not adequately pleaded either reliance or causation, required elements of Plaintiffs' fraud-based claims. This is particularly problematic because Plaintiffs allege that they used the website repeatedly, a fact directly at odds with their conclusory assertions that they would never have made any bids if Quibids had provided additional explanations of bidding practices and strategy.

**Third**, as this Court has previously recognized, Plaintiffs' claims for unjust enrichment and money had and received are "derivative" of Plaintiffs' other claims and therefore fail for the same reasons.

For these reasons, set forth in detail below, Plaintiffs' claims should be dismissed (and Plaintiffs should not be allowed to amend their Complaint yet again while this motion is pending in order to prevent a judicial ruling on the sufficiency of their allegations).

## BACKGROUND

Plaintiffs allege that QuiBids operates a website, www.quibids.com (the "Auction Site"), which offers consumers the right to purchase through an auction format popular consumer products, such as high-definition televisions, iPods, Macbooks, and other high-ticket items. TAC ¶¶ 1, 22.[1] To participate in QuiBids' auctions, the consumer purchases "bids" that cost $0.60 each. *Id.* ¶ 1. Each $0.60 bid increases the purchase price of the

---

[1] For purposes of this Motion to Dismiss, QuiBids accepts the factual allegations in the TAC as true.

2

product by $0.01 or $0.02, depending on the format of the auction.  *Id.*  The auctions typically last many hours and sometimes even days.  *Id.*  Whenever a person places a bid on the Auction Site during the last twenty seconds of an auction, additional time is added to the auction by QuiBids.  *Id.* ¶ 42.  The amount of time added to the auction timer ranges from ten to twenty seconds.  *See id.*  "The last bidder 'wins' the auction and the right to purchase the item."  *Id.*

The purchase price represents what the consumer who "wins the auction will have to pay to obtain the product . . . ."  *Id.* ¶ 43.  If the person exercises his or her right to purchase the item, then that person will pay "the cost of all the bids he or she placed on the item, plus the purchase price of the item, plus shipping costs."  *Id.* ¶¶ 42-43.  However, even if a user of the Auction Site is not the highest bidder, the user can still use the "Buy It Now" feature to purchase the product at the "Value Price" stated on the Site for up to two hours after the end of the auction.  *Id.* ¶ 44.  In other words, the user gets "a credit towards the purchase price for the cost of the losing bids he or she expended."  *Id.*

Plaintiffs purport to bring a nationwide class action against QuiBids and several Individual Defendants[2] in their capacities as executive officers of QuiBids, alleging that the Auction Site constitutes illegal gambling under Oklahoma law and that the Site misrepresents or omits certain information about how the Site operates.  *See generally id.* ¶¶ 5-8, 49-53.  As a result of these alleged illegalities, Plaintiffs assert OCPA, common law fraud, money had and received, and unjust enrichment claims.  *See id.* ¶¶ 73-100.

---

[2] The Individual Defendants are Matt Beckham, Mike Beckham, Josh Duty, Jeff Geurts (incorrectly named as "Jeff Guerts"), and Shaun Tilford.  The Individual Defendants have filed a separate Motion to Dismiss and Brief in Support.

### ARGUMENT & AUTHORITIES

In order "[t]o survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "A plaintiff must 'nudge [his] claims across the line from conceivable to plausible[.]'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Twombly*, 550 U.S. at 570); *see also Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (similar).

To satisfy the plausibility standard, a plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully." *Larson v. Agos*, No. 11-cv-00986-CMA-CBS, 2011 WL 2473078, at *2 (D. Colo. June 22, 2011) (internal quotation marks and citation omitted).   Moreover, a plaintiff may not simply rely on legal conclusions, which the Supreme Court has instructed shall not be "'accept[ed] as true.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678); *see also Allen v. Zavaras*, 430 F. App'x 709, 712 (10th Cir. 2011) ("conclusory allegations . . . are not sufficient").   Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'   Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).   Rather, the complaint must contain sufficient factual heft "to allow the court 'to draw the reasonable inference' that a defendant has acted unlawfully." *Stephenson v. F.B.I.*, No. 2:09-CV-905-CW-SA, 2010 WL 2024704, at *3 (D. Utah Mar. 26, 2010) (citation omitted), *report and recommendation adopted by*, 2010 WL 1978689 (D. Utah May 17, 2010); *see also In re Travel Agent Comm'n Antitrust Litig.*,

583 F.3d 896, 903 (6th Cir. 2009) (explaining that "the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory") (citation and internal quotation marks omitted).   In addition, because Plaintiffs' claims sound in fraud, they must meet the heightened pleading standard of Fed. R. Civ. P. 9(b), which requires that Plaintiffs "set forth the time, place and contents of the false representation" at issue, as well as "the identity of the party making the false statements and the consequences thereof." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (internal quotation marks and citation omitted).

Plaintiffs' Third Amended Complaint does not allege sufficient facts to satisfy the requirements of Rule 8, let alone Rule 9(b).   ***First***, Plaintiffs' claim that QuiBids violated the OCPA by engaging in illegal gambling fails because they have not alleged facts capable of establishing that QuiBids' online auctions constitute gambling, they do not allege that Plaintiffs sustained actionable damages as a result of their use of the website, and their claims are barred by the doctrine of *in pari delicto*.   ***Second***, Plaintiffs' OCPA and fraud claims based on QuiBids' alleged misrepresentations about its auctions fail as a matter of law because Plaintiffs have not alleged reliance or causation with the particularity required under Rule 9(b).   ***Third***, Plaintiffs' claims for unjust enrichment and money had and received are derivative of Plaintiffs' fraud-based claims and thus fail for the same reasons.   Accordingly, Plaintiffs' claims should all be dismissed.

## I.   PLAINTIFFS' CLAIM THAT QUIBIDS ENGAGED IN "UNFAIR TRADE PRACTICES' UNDER THE OCPA (COUNT I) FAILS AS A MATTER OF LAW.

Plaintiffs' first cause of action against QuiBids is styled as a violation of the OCPA "by unfair trade practices." *See* TAC ¶¶ 77, 80.   Plaintiffs base this claim on the allegation

that QuiBids engaged in an "unfair trade practice" deemed "unlawful" under the OCPA by conducting "commercial gambling, " as defined by Okla. Stat. tit. 21, § 982.[3]  *See* TAC ¶¶ 73-82.  This claim should be dismissed because:  (1) Plaintiffs have failed to allege facts capable of establishing that QuiBids' auctions constitute "commercial gambling"; (2) Plaintiffs do not allege that they have suffered any actionable damages as a result of Quibids' alleged conduct; and (3) the doctrine of *in pari delicto* forecloses recovery.

## A.  Plaintiffs Have Failed To Allege Facts Capable Of Establishing That QuiBids Conducts "Commercial Gambling."

Plaintiffs allege that QuiBids conducts commercial gambling on the Site "because it is 'receiving bets' *and* conducting a lottery.'"  TAC ¶ 75 (citation and alteration omitted) (emphasis added).[4]  However, Plaintiffs do not allege facts to support a claim that QuiBids engaged in either type of alleged misconduct.

### 1.  Plaintiffs Do Not Allege Facts Showing That QuiBids Receives Bets.

Plaintiffs do not allege facts capable of establishing that QuiBids illegally took "bets" under Oklahoma law.  Oklahoma's commercial gambling statutes—Okla. Stat. tit. 21, §§ 981-988—define "[a] 'bet' [a]s a bargain in which the parties agree that, dependent upon chance, or in which one of the parties to the transaction has valid reason to believe that it is dependent upon chance, one stands to win or lose something of value specified in the agreement."  Okla. Stat. tit. 21, § 981(1).  The Oklahoma Attorney General has explained

---

[3] Under the OCPA, the term "unfair trade practice" is defined as "any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  Okla. Stat. tit. 15, § 752(14).

[4] A transaction cannot be both a "bet" *and* a "lottery" because these terms are mutually exclusive.  *See, e.g.*, *W. Telcon, Inc. v. Cal. State Lottery*, 917 P.2d 651, 657 (Cal. 1996) (explaining that "[t]hese two categories of gambling are . . . exclusive of one another").

that, under § 981, there is no bet when there has merely been an "offer[] of 'prizes . . .' to . . . participants in public or semipublic events" "contributed solely by associations or other persons that *do not compete* for the 'purses, prizes or premiums.'"  1999 OK AG 5, ¶¶ 10-11 (quoting Okla. Stat. tit. 21, § 981(1)(c)) (emphasis added).  "In other words, in the case of a bet, the money belongs to those who post it, every one of whom has a chance to win it" back from the entity or person to which she posts it.  *Id.* ¶ 10.[5]

For example, if two people each "post" $50.00 before playing a round of golf against one another, the player with the lower score for the round of golf will get the other player's $50.00 *and* receive back the $50.00 he posts.  Because the winner receives back the $50.00 he originally posted, each has placed a "bet."  Likewise, when a person puts $50.00 down on a blackjack table, that person is placing a "bet" because either the player or the dealer will "win" back the $50.00 each has "posted."  *See, e.g.*, 1999 OK AG 5, ¶¶ 14-15 (declaring a "money hunt" to involve bets because, given that "pooled entrance fees . . . [were] distributed to winning contestants," participants could "win" their money back).

By contrast, here, Plaintiffs do not allege that QuiBids' users have a chance to "win" back from QuiBids the money that Plaintiffs allege the users "post" in the form of bids. Rather, Plaintiffs allege that each time a QuiBids' user places a bid, the user unequivocally relinquishes to QuiBids a $0.60 fee that the user can never get back, even if the user wins the

---

[5] *Accord Toomey v. Penwell*, 245 P. 943, 945 (Mont. 1926) (distinguishing between a bet, which can be won back by the person posting it, and a prize which, under all circumstances, must be awarded by its offeror); *Misner v. Knapp*, 9 P. 65, 66 (Ore. 1885) ("[A]ccording to the definition of 'wager,' there must be two or more contracting parties, having mutual rights in respect to the money or other thing wagered or, as sometimes said, 'staked,' and each of the parties necessarily risks something, and has a chance to make something upon the happening or not happening of an uncertain event.").

auction in which the bid is placed.[6]  *See, e.g.*, TAC ¶ 45 ("[W]hen a QuiBids consumer bids

on an item, the consumer loses the $0.60 paid for each bid, regardless of whether or not the

consumer actually wins the item.").   Accordingly, Plaintiffs have not alleged that QuiBids

conducts "commercial gambling" by receiving "bets," because they cannot allege that users

"risk" losing the $0.60 associated with each bid.

For these reasons, courts have held that auctions like those conducted by QuiBids do

not involve receiving "bets" and therefore do not constitute gambling.   For example, in

*Manning v. Creative Headquarters, LLC*, No. 11-C-2203 (N.D. Ill. Mar. 30, 2012), the court

dismissed similar claims based on the allegation that penny auction participants were entitled

to recover sums spent in what they alleged to be illegal gambling transactions.   As the court

explained:

> Because all participants' entry and bidding fees are certain to be lost to
> Vesuvius and the other [penny auction] defendants, such fees never hang in
> the balance because at no point do the penny auction participants pay
> anything to the defendants that is in any way dependent on the outcome of
> any auction.   Defendants do not compete for the merchandise being
> auctioned.   *Absolutely nothing is undetermined or contingent about the participants'*
> *payment of fees to defendants, and thus, the participants do not "risk" losing their entry or*
> *bidding fees.*

*See* Ex. "1" attached hereto at 3 (emphasis added).[7]

Other courts have held similarly.   For example, in *Hardin v. NBC Universal, Inc.*, 660

S.E.2d 374, 375-76 (Ga. 2008), the Georgia Supreme Court held that, even though NBC

charged a $0.99 text messaging fee for each entry in a game it conducted, NBC had not

---

[6] As Plaintiffs allege, "[t]he last bidder 'wins' the auction and the *right to purchase* the item," not the item itself.   *See* TAC ¶ 42 (emphasis added).   The cost of the bids used to win is not credited toward the purchase price the winner is given the opportunity to pay.

[7] *But cf. Mendelsohn v. BidCactus, LLC*, No. 3:11-CV-1500(JCH), 2012 WL 1059702 (D. Conn. Mar. 28, 2012) (applying Connecticut law).

accepted "bets" or "wagers" from its viewers because "the $[0].99 . . . never h[ung] in the balance" and could not be won back as a part of the game.  Likewise, in *Humphrey v. Viacom, Inc.*, No. 06-2768, 2007 WL 1797648, at *8 (D.N.J. June 20, 2007), the U.S. District Court for the District of New Jersey held that participation fees paid by online fantasy football players did "not constitute bets or wagers" because they were "paid unconditionally for the privilege of participating in a contest . . . that is guaranteed to be won by one of the contestants (but not the entity offering the prize)."  *See also State v. Am. Holiday Ass'n, Inc.*, 727 P.2d 807, 809 (Ariz. 1986) (holding that, where "[t]he prize offered is paid only to participants and the participants themselves determine the outcome, . . . . such contests do not involve bets"); *Las Vegas Hacienda, Inc. v. Gibson*, 359 P.2d 85, 86-87 (Nev. 1961) ("[A] purse or prize offered by a party . . . in a contest in which such party does not engage . . . is without the element of a chance of gain or a risk of loss which characterizes the wager agreement.").

The same is true here.  Plaintiffs themselves allege that the $0.60 "bids" placed by QuiBids.com users are a fee for participation in the online auction that is kept by QuiBids "regardless of whether or not the consumer actually wins the item."   TAC ¶ 45.  Accordingly, the bids do not qualify as "bets" under Oklahoma law.

### 2. Plaintiffs Do Not Allege Facts Showing That QuiBids Operates A Lottery.

Plaintiffs also fail to allege facts capable of establishing that QuiBids operates an illegal lottery.  In Oklahoma, "a lottery is any gambling scheme which contains elements of (1) prize, (2) chance, [and] (3) consideration."  *State ex rel. Draper v. Lynch*, 137 P.2d 949, 953 (Okla. 1943); *see also* Okla. Stat. tit. 21, § 1051.  "[B]etting[] and lotteries are separate and

distinct things in law and fact . . . ."[8]  *People v. Postma*, 69 Cal. App. Supp. 2d 814, 819 (1945);

*see also Ginsberg v. Centennial Turf Club, Inc.*, 251 P.2d 926, 929 (Colo. 1952) ("[N]ot . . . all

gambling is a 'lottery' . . . as th[at] term[] [is] defined in law.").  "Betting may be defined as

promises to give money or money's worth upon the determination of an uncertain or

unascertained event in a particular way, *and (unlike a lottery)* may involve skill or judgment."

*W. Telcon, Inc. v. Cal. State Lottery*, 917 P.2d 651, 655 (Cal. 1996) (quotation and alteration

omitted) (emphasis added).  In other words, if a game's outcome is dependent in any way

upon skill, it is not a lottery.

      The Missouri Supreme Court has articulated this point:

> From an individual player's perspective, a lottery is a form of gambling
> in which consideration is paid for an opportunity at a prize, where skill
> is absent or only nominally present.  No player's choice or will has any
> part in the lottery's result, nor can human reason, foresight, sagacity, or
> design enable a player to affect the game. Skill does not affect the
> probability of 'winning.'  *No one can be a better lottery player than anyone else*
> (though players may buy more opportunities).

*Harris v. Missouri Gaming Comm'n*, 869 S.W.2d 58, 62 (Mo. 1994) (footnote omitted) (emphasis

added); *see also State v. Khalsa*, 542 N.W.2d 263, 266 (Iowa Ct. App. 1995) (explaining that

"[t]he chance element [of Iowa's lottery statute] refers to the *absence of skill* or design.")

(emphasis added).

      Plaintiffs say that QuiBids conducts a lottery because the $0.60 a user pays QuiBids

for a bid is consideration paid for a chance to win a prize.  TAC ¶ 76.  However, their own

allegations show that QuiBids' online auctions require skill and therefore are not lotteries

based entirely on chance.  For example, Plaintiffs allege that "many" QuiBids' users have

---

[8] The Oklahoma Legislature defines "bets" and "lottery" in two wholly separate
statutes.

adopted "wise bidding strateg[ies]" to improve their chances of winning an auction, including strategically timing their bets. *See* TAC ¶¶ 6, 46. Thus, Plaintiffs' pleadings readily admit that it is possible for one individual to be a "better" or more successful QuiBids' user than another individual based on his or her use of strategy learned over time. This could not be true if QuiBids operated a lottery because "no one can be a better lottery player than anyone else." *Harris*, 869 S.W.2d at 62. As a result, Plaintiffs fail to allege that QuiBids operates a lottery.

In some jurisdictions, it is not the absence of skill that creates a lottery, but rather the fact that chance predominates over any element of skill. Even if such a "predominance" standard applied here, Plaintiffs' claims nonetheless fail because Plaintiffs do not allege sufficient facts to establish that the outcome of QuiBids' auctions are primarily dictated by chance.[9]

Section 1051 does not define the word "chance"; nor is the term defined elsewhere by the Oklahoma Legislature. The Court should thus turn to the plain meaning of the word. *See, e.g.*, *Whirlpool Corp. v. Henry*, 110 P.3d 83, 84 (Okla. Ct. Crim. App. 2005) ("We look at the plain meaning of the statutory language."); *see also Ridley Packing Co. v. Holliday*, 467 P.2d 480, 482 (Okla. 1970) ("The Supreme Court may not expand the plain meaning of the words [of a statute] by construction. The legislature has expressed its intention in the statute as enacted.") (citation omitted). The plain meaning of "chance" is "[s]omething that happens

---

[9] Section 1051 and the OCPA both carry criminal penalties and thus, both should be construed "liberally in favor of the accused." *See State v. Duc Hong Pham Tran*, 172 P.3d 199, 200 (Okla. Crim. App. 2007). Thus, to the extent there is any ambiguity, the predominance standard should not be applied. Rather, the more liberal "absence of skill" standard should be applied.

unpredictably *without any discernible human intention* or direction and *in dissociation from any observable pattern.*"  WEBSTER'S DICTIONARY 225 (9th ed. 1986) (emphasis added); *see also U.S. Postal Serv. v. Amada*, 200 F.3d 647, 652 (9th Cir. 2000) (adopting Webster's definition); *Opinion of the Justices*, 795 So. 2d 630, 635 (Ala. 2001) (defining chance as "the absence of 'controllable causation'—'the opposition of intention'") (quoting BLACK'S LAW DICTIONARY 231 (6th ed. 1990)); *De Witt Motor Co. v. Bodnark*, 169 N.E.2d 660, 667 (Ohio Ct. Com. Pl. 1960) (defining chance as a "result in which human reason, or will or design is lacking").  As set forth above, Plaintiffs' own allegations—which show that users can affect the outcome of auctions by strategically choosing when and how to bid—establish that the auctions are not entirely unpredictable and that the results of those auctions are affected by human intention. Accordingly, the auctions do not constitute lotteries.

## B.    Plaintiffs Do Not Allege Any Actionable Damages.

Even if Plaintiffs could establish that QuiBids' auctions violate Oklahoma's gambling laws, they could not state a private cause of action under the OCPA based on such a violation.  "[T]he four elements of a consumer's private action under the OCPA are: (1) that the defendant engaged in an unlawful practice as defined at [Okla. Stat. tit. 15, § 753]; (2) that the challenged practice occurred in the course of defendant's business; (3) that the plaintiff, as a consumer, suffered an injury in fact; and (4) that the challenged practice caused the plaintiff's injury." *Patterson v. Beall*, 19 P.3d 839, 846 (Okla. 2000); *accord Brannon v. Munn*, 68 P.3d 224, 227 (Okla. Civ. App. 2002).  In discussing the "injury in fact" requirement, the Oklahoma Supreme Court has explained that a private plaintiff cannot successfully maintain an OCPA claim "merely [by] pro[ving] that [she] was a consumer in an unlawful transaction" because "[a]ctual damages are . . . necessary." *Walls v. Am. Tobacco Co.*, 11 P.3d 626, 629

(Okla. 2000).[10]  In other words, a private plaintiff cannot recover damages under the OCPA if she "received precisely what [she] . . . bargained for" in what is an otherwise allegedly illegal transaction.  *Id.*

By asserting an OCPA claim based solely on an allegation that QuiBids conducts illegal commercial gambling, each Plaintiff attempts to do exactly what the Oklahoma Supreme Court has explained he cannot:  recover damages "merely [by] pro[ving] that [he] was a consumer in an unlawful transaction."  *Id.*  None of the Plaintiffs alleges or even suggests that he did not "receive[] precisely what [he] bargained for."  Instead, each Plaintiff concedes for the purposes of this claim that he knowingly paid for and received the opportunity to participate in an auction with no guarantee to win.  *See Whitlock v. Bob Moore Cadillac, Inc.*, 938 P.2d 737, 738 (Okla. 1997) (affirming the grant of summary judgment to defendant on an OCPA claim because "the buyers received precisely that for which they had bargained, and had [thus] incurred no monetary damages").

A number of courts have rejected similar claims under the federal civil RICO statute, which, like private OCPA claims, requires proof that the defendant's allegedly unlawful act caused the plaintiff to suffer an injury.  For example, in *Adell v. Macon County Greyhound Park, Inc.*, 785 F. Supp. 2d 1226 (M.D. Ala. 2011), plaintiffs sought, *inter alia*, to use RICO "to get back . . . wagers" they lost "playing electronic bingo machines" at a Greyhound Park located in Alabama.  *Id.* at 1230.  In dismissing the plaintiffs' RICO claim, the *Adell* court first

---

[10] *See also Harrison v. Leviton Mfg. Co., Inc.*, No. 05-CV-0491-CVE-FHM, 2006 WL 2990524, at *5 (N.D. Okla. Oct. 19, 2006) ("[P]laintiff must allege actual damages to qualify as an 'aggrieved consumer' under the [OCPA].")*; Tibbetts v. Sight 'N Sound Appliance Ctrs., Inc.*, 77 P.3d 1042, 1051 (Okla. 2003) ("*Walls* made it abundantly clear that . . . the OCPA[] requires the consumer to show something more than a violation of the Act; instead for a viable private claim under the OCPA the consumer *must* show actual damages as a necessary element of a claim.").

13

observed that "a number of courts have rejected [the] argument[] . . . that the alleged illegality of [a] gambling transaction under state law translate[s] into a[n] . . . injury to property." *Id.* at 1239 (collecting cases).  The *Adell* court explained that "even if the chance to win that Plaintiffs paid for was illegal under state law, such illegality in and of itself would not transform Plaintiffs' gambling losses in to civil . . . property losses" because the plaintiffs "got exactly what they bargained for . . . a chance to be a winner . . . ." *Id.* at 1239-41 (quotation omitted); *see also Major League Baseball Props., Inc. v. Price*, 105 F. Supp. 2d 46, 51-52 (E.D.N.Y. 2000) (recognizing that "[t]he illegality and voidness of the gambling transaction [under state law] does not change th[e] fact" that the trading card purchaser paid for a bona fide chance to win a prize and thus, suffered no property injury); *Green v. Aztar Corp.*, No. 02-C-3514, 2003 WL 22012205, at *2 (N.D. Ill. Aug. 22, 2003) ("Green's disappointment at not winning his bets does not constitute an 'injury to property' sufficient to confer RICO standing.").

This case is no different.  Plaintiffs have not alleged that they suffered any actionable damages as a result of QuiBids' alleged gambling activities because they got exactly what they bargained for—the chance to win auctions.  Accordingly, Plaintiffs' gambling-based OCPA claim should be dismissed.

### C.     Plaintiffs Are Barred From Pursuing Claims Based On QuiBids' Alleged Gambling Activities Under The Doctrine Of *In Pari Delicto*.

Plaintiffs' gambling-based OCPA claim is also barred as a matter of law under the doctrine of *in pari delicto*.  Under this doctrine, "no one knowingly participating in a transaction [allegedly] intended to accomplish a purpose forbidden by law can bring an action for *any cause* directly connected with that illegality." *Brinley v. Williams*, 114 P.2d 463,

464-65 (Okla. 1941) (emphasis added).  This means that "parties to an [alleged] immoral or illegal transaction are . . . estopped, as to the other, to take advantage of [their] own moral turpitude, illegal act, or criminal conduct for purposes of recovering damages for injuries sustained as a consequence of their joint wrong.'"  *Tillman v. Shofner*, 90 P.3d 582, 584 (Okla. Civ. App. 2004) (quoting *Bowlan v. Lunsford*, 54 P.3d 666, 668 (Okla. 1936)).  Other courts have held that this doctrine precludes claims for losses allegedly sustained as a result of illegal gambling activities.

In *Kelly v. First Astri Corp.*, 72 Cal. App. 4th 462 (1999), for example, the court affirmed summary judgment for the defendant on claims alleged by a plaintiff who allegedly lost money while playing in an illegal blackjack game on an Indian reservation.  According to the court, under the doctrine of *in pari delicto*, "neither courts of law nor courts of equity will aid or assist a plaintiff to recover money lost in a gambling game that is prohibited by law[.]"  *Id.*  at 490.  Because the "form of blackjack in which [the appellant and other plaintiffs] engaged" was illegal, the court held that the plaintiff could not assert valid claims based on losses allegedly sustained while gambling.  *Id.* at 490, 496.

The same is true here.  Plaintiffs seek to bring an action based on the allegation that they participated in illegal gambling activities with QuiBids by placing bids on QuiBids' online auctions.  Thus, Plaintiffs are seeking to "recover[] damages for injuries sustained as a consequence of [their alleged] joint wrong" with QuiBids.  *Tillman*, 90 P.3d at 584.  This is precisely the type of claim that is barred under the doctrine of *in pari delicto*.  For this reason, too, Plaintiffs' gambling theory fails.

## II.   PLAINTIFFS' CLAIMS FOR VIOLATION OF THE OCPA BY DECEPTIVE TRADE PRACTICES (COUNT II) AND COMMON LAW FRAUD (COUNT III) ALSO FAIL.

In addition to alleging that QuiBids' auctions constitute illegal commercial gambling, Plaintiffs allege that QuiBids engaged in "deceptive trade practices" under § 753(20) of the OCPA[11] and committed common law fraud by making misrepresentations about its online auctions.  *See* TAC ¶¶ 83-94.  These claims should be dismissed under Fed. R. Civ. P. 9(b) because Plaintiffs have not alleged the required elements of reliance and causation with sufficient particularity.

Under Oklahoma law, "[a]ctionable fraud consists of a false material representation made as a positive assertion which is known either to be false, or made recklessly without knowledge of the truth, with the intention that it be acted upon, and which is relied upon by a party to his/her detriment."  *Tice v. Tice,* 672 P.2d 1168, 1171 (Okla. 1983).  With regard to the last of these elements, "[t]he key is that without the representation the party would not have acted."  *Id.*  Thus, fraud claims require an allegation that the plaintiff "relied" on the alleged misstatement and "was in fact deceived" by it, regardless of whether an "ordinarily prudent person should have been misled."  *Id.* (emphases added); *see also Kelley v. Mid-Am. Racing Stables, Inc.*, 139 F.R.D. 405, 411 (W.D. Okla. 1990) ("[P]laintiff['s] claims of common law fraud will necessarily involve the element of individual reliance.").  Similarly, OCPA claims based on an alleged misrepresentation require proof that the misstatement at issue actually "caused the plaintiff's injury."  *Patterson v. Beall*, 19 P.3d 839, 846 (Okla. 2000); *Terry*

---

[11] The OCPA defines a "deceptive trade practice" to "mean[] a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person."  Okla. Stat. tit. 15, § 752(13).

*v. Nuvell Credit Corp.*, No. CIV-06-0851-F, 2007 WL 2746919, at *5 (W.D. Okla. Sept. 20, 2007) (Friot, J.) (plaintiffs must establish that they sustained an injury that was "caused by the actions which the plaintiffs contend constituted the violation of the Consumer Protection Act").   Because Plaintiffs' claims sound in fraud, the reliance and causation elements must be pleaded with particularity under Rule 9(b).   *See Brown v. Chaffee*, 612 F.2d 497, 503 (10th Cir. 1979) (state-law fraud claims must "be stated with particularity" under Rule 9(b)); *Lee v. Enter. Fin. Grp.*, No. CIV-08-1221-M, 2009 WL 1362605, at **3-4 n.1 (W.D. Okla. May 14, 2009) (dismissing claims for fraud and violation of the Oklahoma Consumer Protection Act under Rule 9(b)).

"At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where and how' of the alleged fraud." *See United States ex rel. Lacy v. New Horizons, Inc.*, 348 F. App'x 421, 424 (10th Cir. 2009).   Specifically, Plaintiffs must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (internal quotation marks and citation omitted); *see also 4S Dev. Co., Ltd., LLLP v. FDIC*, No. CIV-10-299-M, 2011 WL 5179797, at *2 (W.D. Okla. Nov. 1, 2011) (same).   As numerous courts have explained, if a plaintiff fails to make allegations detailing the specific facts of the alleged fraud, "the court may dismiss the plaintiff's [fraud-based] claim." *Estate of Scott v. Scott*, 907 F. Supp. 1495, 1499 (M.D. Ala. 1995); *accord O'Malley v. O'Neill*, 887 F.2d 1557, 1563 (11th Cir. 1989); *Blount Fin. Servs., Inc. v. Walter E. Heller & Co.*, 819 F.2d 151, 152-53 (6th Cir. 1987).

For example, in *Adkins v. Bristol-Myers Squibb Co.*, No. 3:07-cv-00901 (FLW), 2009 WL 5216986 (D.N.J. Dec. 30, 2009), the court dismissed statutory consumer fraud claims brought by the purchaser of the prescription drug Plavix based on the allegation that the manufacturer falsely misrepresented the drug as having superior efficacy and failed to disclose certain risks of the drug. According to the court, the plaintiff's claims failed as a matter of law because he failed to plead causation with the required particularity under Rule 9(b). *Id.* at *6. Specifically, the court noted that the complaint "failed to identify which misinformation reached Plaintiff or his prescribing physician and when the misrepresentations were received by Plaintiff and his physician." *Id.* Instead, the plaintiff merely included a "mechanical recitation of the elements" of a consumer fraud claim— including causation—without providing any "specific facts" about when the alleged misrepresentations were made and how they affected the plaintiff's decision to use the drug. *Id.* "Without this information," the court explained, "[p]laintiff's allegations not only fail to satisfy the requirements of Rule 9(b), they amount to [a] mere legal conclusion that does not state a plausible claim upon which relief can be granted." *Id.*

Courts have similarly held that "[c]onclusory statements of reliance are not sufficient to explain with particularity how [each Plaintiff] detrimentally relied on the alleged fraud" in a common law fraud action. *See Evans v. Pearson Enters., Inc.*, 434 F.3d 839, 852-53 (6th Cir. 2006); *see also Elias v. Hewlett-Packard Co.*, No. 12-CV-00421-LHK, 2012 WL 4857822, at *10 n.3 (N.D. Cal. Oct. 11, 2012) (the plaintiff's "only statement of reliance on Defendants' conduct is entirely conclusory in nature—it does not allege with any particularity *how* Plaintiff relied on Defendants' representations, nor does it allege *why* Plaintiff would have acted

differently without those representations"). As these and other courts have noted, in order to satisfy Rule 9(b), "each plaintiff must allege his reliance on *particular* statements" that were made by the defendant and on which his claim is based. *See Gandhi v. Sitara Cap. Mgmt., LLC,* 689 F. Supp. 2d 1004, 1008 (N.D. Ill. 2010) (emphasis added); *see also Brown v. N. Cent. F.S., Inc.,* 173 F.R.D. 658, 655-66 (N.D. Iowa 1997) (explaining that in a case involving . . . multiple plaintiffs bringing suit on the basis of different transactions, . . . each plaintiff must allege that he or she was the victim of *specific* materially false statements in relation to the transaction in which he or she was involved") (emphasis added).

The allegations in Plaintiffs' TAC do not meet this heightened pleading requirement. In the previous Complaints filed in this case, Plaintiffs failed to make any allegation that they relied on QuiBids' alleged misstatements or explain how those misstatements caused them to lose money. In apparent recognition of this deficiency, each Plaintiff now offers the same, single allegation regarding reliance/causation in the TAC: "Had [QuiBids] disclosed on the Site all of the material facts which they failed to disclose, as set forth above, [Plaintiff] would not have used the Site." TAC ¶¶ 57, 62, 64. This conclusory allegation does not even come close to pleading causation or reliance with the particularity required under Rule 9(b). None of the Plaintiffs has identified which statements from QuiBids they viewed before participating in auctions, when the Plaintiff viewed those statements, why the statements were misleading or how the Plaintiff believes the site worked at the time of placing his first bid. Moreover, none of the Plaintiffs has offered any explanation as to why he would have refused to participate in a QuiBids.com auction if he had received more or different information. These are particularly critical allegations since Plaintiffs allege in their

Complaint that they continued using the site multiple times—after which they would have presumably known the information that they now claim was withheld.  In short, Plaintiffs have failed to allege any specific facts that support a showing of reliance/causation. Accordingly, their claims for fraud and deceptive trade practices should be dismissed under Rule 9(b).

## III.   PLAINTIFFS' CLAIMS FOR MONEY HAD AND RECEIVED (COUNT IV) AND UNJUST ENRICHMENT (COUNT V) SHOULD BE DISMISSED.

As set forth in this Court's December 29, 2011 Order dismissing the First Amended Complaint, Plaintiffs' claims for unjust enrichment and money had and received are "derivative of" Plaintiffs' other claims because they are based on alleged omissions that were deceptive, unfair or fraudulent.  Order [Dkt. No. 41] at 22; *see also Brill v. Walt Disney Co.,* No. 107249, 2010 WL 5011594, at *5 (Okla. Civ. App. Aug. 23, 2010) (noting unjust enrichment claim was "merely derivative" of OCPA claim and "inasmuch as [plaintiff] cannot establish those claims as a matter of law, his derivative claims likewise fail").  Plaintiffs have not substantively amended these claims in the TAC.  Thus, once again, Counts IV (had and received) and V (unjust enrichment) are derivative of Plaintiffs' fraud and OCPA claims and fail for all the reasons discussed above.

## IV.   DISMISSAL SHOULD BE WITH PREJUDICE.

As this litigation has progressed, it has become Plaintiffs' customary practice to respond to motions to dismiss filed by QuiBids by seeking leave to amend their Complaint while the motion is pending.  However, courts have held that a motion to amend should be denied "when it appears that the plaintiff is using Rule 15 to make the complaint a moving target" or "to present theories seriatim in an effort to avoid dismissal."  *Hindbaugh v. Bd. of*

*Cnty. Comm'rs. of Washita Cnty.*, No. CIV-06-1240-C, 2008 WL 2944924, at \*2 (W.D. Okla. July 24, 2008) (quotations omitted).  Accordingly, QuiBids respectfully asks that the Court refuse any further requests by Plaintiffs for leave to amend their allegations.  Plaintiffs have had ample opportunity to state a cognizable claim for relief against Quibids, but have not done so.  It is time for the Court to pass judgment on the adequacy of Plaintiffs' allegations.

## **CONCLUSION**

For the foregoing reasons, QuiBids respectfully requests that the Third Amended Complaint be dismissed without further leave to amend under Fed. R. Civ. P. 8(a), 9(b), and 12(b)(6).

DATED:  November 5, 2012                Respectfully submitted,


/s/ *Michael D. McClintock*
Reid Robison, OBA #7692
Michael D. McClintock, OBA #18105
McAfee & Taft A Professional Corporation
10th Floor, Two Leadership Square
211 North Robinson Avenue
Oklahoma City, OK 73102
Telephone: (405) 235-9621
Facsimile:   (405) 235-0439
reid.robison@mcafeetaft.com
michael.mcclintock@mcafeetaft.com

Of counsel:

John H. Beisner, *pro hac vice application forthcoming*
Jessica D. Miller, *pro hac vice application forthcoming*
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: (202) 371-7000
Facsimile:   (202) 393-5760
john.beisner@skadden.com
jessica.miller@skadden.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on November 5, 2012 I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following registrants:

- Edward L. White
  ed@edwhitelaw.com, jan@edwhitelaw.com

- Roger L. Mandel
  rlm@lhllaw.net, tlt@lhlaw.net

*s/ Michael D. McClintock*